UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALEXANDER MADDOX,
Inmate # 331272,

        Petitioner,


-vs-

CATHERINE BAUMAN, Warden,
Alger Correctional Facility,

        Respondent.

_____/

## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner, ANTHONY ALEXANDER MADDOX, by and through his counsel,

Phillip D. Comorski, and petitions this Honorable Court for a Writ of Habeas Corpus,

in support thereof, states as follows:

1.    Petitioner herein, Anthony Alexander Maddox (hereinafter "Petitioner"),

is domiciled in Munising Michigan, and is imprisoned in the Alger Reformatory

Correctional Facility.

2.    Petitioner is unconstitutionally detained by the Respondent where he is

serving a life sentence for a conviction of first-degree murder, MCL 750.316(1)(a),

2-5 years' imprisonment for a felon-in-possession conviction, MCL 750.224f, and a

1

consecutive 2-year term of imprisonment for a conviction of possession of a firearm during the commission of a felony. MCL 750.227b.

3.    Venue is proper because Petitioner was convicted in Wayne County, Michigan.

4.    Petitioner has exhausted all state remedies available to him with regard to the constitutional issues raised in this petition by taking the following steps:

A)    Petitioner appealed by right, and on February 23, 2013, the convictions were affirmed by the Michigan Court of Appeals (Docket # 324084).

B)    On September 27, 2016, the Michigan Supreme Court denied leave to appeal pursuant to a Standard Order (Docket # 153526).

C)    Petitioner filed a Motion for Relief from Judgment on December 19, 2017, and the Motion was denied on April 23, 2018, by way of an Opinion and Order.

D)    Leave to appeal was denied by the Court of Appeals on March 20, 2019, "because defendant has failed to establish that the trial court erred in denying the motion for relief from judgment." (Docket # 346486).

E)    Leave to appeal was denied by the Michigan Supreme Court on September 30, 2019, pursuant to an Order stating, "the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." (Michigan Supreme Court Docket # 159555).  Reconsideration was denied on February 4, 2020.

5.    Petitioner is detained unconstitutionally by the Respondent, because his conviction and sentence is constitutionally invalid based on the following grounds:

I.    TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE FAILED TO FILE A NOTICE OF ALIBI DEFENSE, OR CONDUCT A REASONABLE INVESTIGATION INTO PETITIONER'S POTENTIAL ALIBI DEFENSE.

II.   TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE FAILED TO CALL A PROPER FOUNDATIONAL WITNESS TO INTRODUCE DEFENSE EVIDENCE.

III.  PETITIONER WAS DENIED A FAIR TRIAL WHEN THE COURT, IN ITS FINAL INSTRUCTIONS TO THE JURY, REJECTED THE REQUEST FOR THE ADDICT-INFORMER INSTRUCTION, THEREBY DENYING HIM THE RIGHT TO A PROPERLY INSTRUCTED JURY.

IV.   THE JOINDER OF THE MURDER COUNT AND THE MUTILATION COUNT INTO ONE PROSECUTION DEPRIVED PETITIONER OF A FAIR TRIAL, AS THE ALLEGED ACTS OCCURRED ON DIFFERENT NIGHTS, IN DIFFERENT CITIES, AND THERE WAS NO SHOWING THAT THE ACTS WERE A SERIES OF CONNECTED ACTS.

V.    THE COURT'S EXCLUSION OF MEMBERS OF THE PUBLIC FROM THE COURTROOM DURING THE FIRST DAY OF TRIAL VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL.

VI.   PETITIONER WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS BECAUSE THE PROSECUTION VIOLATED *BRADY/GIGLIO* BY WITHHOLDING INFORMATION BEARING ON THE CREDIBILITY OF THE OFFICER-IN-CHARGE, WHO WAS LATER CHARGED WITH AND CONVICTED OF TAMPERING WITH EVIDENCE.

VII.  PETITIONER WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED BASED ON INSUFFICIENT EVIDENCE.

VIII. PETITIONER WAS DENIED A FAIR TRIAL BECAUSE THE PROSECUTOR ENGAGED IN BLATANT PROSECUTORIAL MISCONDUCT.

6.     Petitioner has not filed a previous Petition for Writ of Habeas Corpus in this or any other federal court.

7.     The instant petition is brought within the statute of limitations under 28 USC §2244(d)(1)(A).  Petitioner's last state filing was denied on February 4, 2020.


WHEREFORE, Petitioner ANTHONY ALEXANDER MADDOX requests:

A.     That Respondent be required to appear and answer the allegations of this Petition;

B.     That after full consideration of this Petition, this Court relieve Petitioner of the unconstitutional restraint on his liberty;

C.     That this Court grant such other, further, and different relief as the Court may deem just and proper under the circumstances;

D.     That this Court grant oral argument in this matter;

E.     If this Court believes that the record is insufficient to resolve this claim, that this Court hold an evidentiary hearing.


Respectfully submitted,


*S/Phillip D. Comorski*
PHILLIP D. COMORSKI (P46413)
Attorney for Petitioner
1300 Broadway Street, Suite 800
Detroit, Michigan 48226
(313) 963-5101
comorskiphillip@gmail.com

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


ANTHONY ALEXANDER MADDOX,
Inmate # 331272,

        Petitioner,


-vs-


CATHERINE BAUMAN, Warden,
Alger Correctional Facility,

        Respondent.
_____ /


## **VERIFICATION**


STATE OF MICHIGAN )
                      )ss
COUNTY OF WAYNE )


      Phillip D. Comorski, Attorney for Petitioner Maddox, deposes and says under penalty of perjury that he has read the foregoing Petition for Writ of Habeas Corpus, knows the contents thereof, and that the same is true to the best of his knowledge, information and belief, based upon the files and records in this case.


                             *S/Phillip D. Comorski*_____
                             PHILLIP D. COMORSKI (P46413)

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALEXANDER MADDOX,
Inmate # 331272,

        Petitioner,


-vs-

CATHERINE BAUMAN, Warden,
Alger Correctional Facility,

        Respondent.
_____/


**BRIEF IN SUPPORT OF PETITION
FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2254**


        PHILLIP D. COMORSKI (P46413)
        Attorney for Petitioner
        1300 Broadway Street, Suite 800
        Detroit, Michigan 48226
        (313) 963-5101
        comorskiphillip@gmail.com

# TABLE OF CONTENTS

**PAGE**

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

STATEMENT REGARDING EXHAUSTION.. . . . . . . . . . . . . . . . . . . . . . . . . . .  3

STATEMENT ON CUSTODY AND LACK OF PROCEDURAL DEFAULT.. . .  4

STANDARD OF REVIEW.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

ARGUMENTS:

      I.     TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW
           AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE
           FAILED TO FILE A NOTICE OF ALIBI DEFENSE, OR CONDUCT
           A   REASONABLE   INVESTIGATION   INTO   PETITIONER'S
           POTENTIAL ALIBI DEFENSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

      II.    TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW
           AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE
           FAILED TO CALL A PROPER FOUNDATIONAL WITNESS TO
           INTRODUCE DEFENSE EVIDENCE. . . . . . . . . . . . . . . . . . . . . . .  22

      III.   PETITIONER WAS DENIED A FAIR TRIAL WHEN THE COURT,
           IN ITS FINAL INSTRUCTIONS TO THE JURY, REJECTED THE
           REQUEST   FOR   THE   ADDICT-INFORMER   INSTRUCTION,
           THEREBY   DENYING   HIM   THE   RIGHT   TO   A   PROPERLY
           INSTRUCTED JURY.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  24

IV.  THE JOINDER OF THE MURDER COUNT AND THE MUTILATION COUNT INTO ONE PROSECUTION DEPRIVED PETITIONER OF A FAIR TRIAL, AS THE ALLEGED ACTS OCCURRED ON DIFFERENT NIGHTS, IN DIFFERENT CITIES, AND THERE WAS NO SHOWING THAT THE ACTS WERE A SERIES OF CONNECTED ACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

V.  THE COURT'S EXCLUSION OF MEMBERS OF THE PUBLIC FROM THE COURTROOM DURING THE FIRST DAY OF TRIAL VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

VI.  PETITIONER WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS BECAUSE THE PROSECUTION VIOLATED *BRADY/GIGLIO* BY WITHHOLDING INFORMATION BEARING ON THE CREDIBILITY OF THE OFFICER-IN-CHARGE, WHO WAS LATER CHARGED WITH AND CONVICTED OF TAMPERING WITH EVIDENCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

VII.  PETITIONER WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED BASED ON INSUFFICIENT EVIDENCE. . . 38

VIII.  PETITIONER WAS DENIED A FAIR TRIAL BECAUSE THE PROSECUTOR ENGAGED IN BLATANT PROSECUTORIAL MISCONDUCT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

RELIEF REQUESTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 44

# INDEX OF AUTHORITIES

**CASES**                                                      **PAGE**

*Anderson v Johnson*, 338 F3d 382 (CA 5, 2003). . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Appel v Horn*, 250 F3d 203, 210 (CA3, 2000). . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Arizona v Fulminante,* 499 US 279, 310 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Beasley v United States,* 491 F 2d 687 (CA6, 1974). . . . . . . . . . . . . . . . . . . . . . . 13

*Berger v United States*, 295 US 78, 88 (1935). . . . . . . . . . . . . . . . . . . . . . . . . . . 40

*Blackburn v Foltz*, 828 F 2d 1177, 1187 (CA 6, 1987). . . . . . . . . . . . . . . . . . . . . 10

*Boyle v Million,* 201 F3d 711, 717-718 (CA6, 2000). . . . . . . . . . . . . . . . . . . . . . 40

*Brady v Maryland*, 373 US 83, 88 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Brown v Myers*, 137 F3d 1154, 1156 (CA9, 1998). . . . . . . . . . . . . . . . . . . . . . . . 16

*Brumley v Wingard*, 269 F3d 629, 638 (CA6, 2001). . . . . . . . . . . . . . . . . . . . . . . 6

*Bryant v Scott*, 28 F 3d 1411, 1419 (CA5, 1994). . . . . . . . . . . . . . . . . . . . . . . . . 13

*Bugh v Mitchell*, 329 F3d 496, 512 (CA6, 2003). . . . . . . . . . . . . . . . . . . . . . . . . 27

*Campbell v Rice*, 408 F 3d 1166, 1171-1172 (CA9, 2005) . . . . . . . . . . . . . . . . . 33

*Cave v Singletary*, 971 F2d 1513 (CA 11, 1992). . . . . . . . . . . . . . . . . . . . . . . . 9, 18

*Chambers v Mississippi*, 410 US 284, 294 (1973). . . . . . . . . . . . . . . . . . . . . . . . 16

*Clemmons v Sowders*, 34 F3d 352, 357 (CA6, 1994). . . . . . . . . . . . . . . . . . . . . . 27

-iii-

*Crane v Kentucky*, 476 US 683, 690 (1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Davis v Alaska*, 415 US 308 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Douglas v Alabama*, 380 US 415 (1965). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Estelle v McGuire*, 502 US 62(1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Evitts v Lucey,* 469 US 487; 105 S Ct 830; 83 L Ed 2d 821 (1985). . . . . . . . . . . 30

*Foster v Lockhart*, 9 F 3d 722, 726 (CA8, 1993). . . . . . . . . . . . . . . . . . . . . . . . 20

*Foster v Wolfenbarger*, 687 F3d 702 (CA6, 2012).. . . . . . . . . . . . . . . . . . . . . . . 19

*Francis v Franklin,* 471 US 307, 316 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Gannett Co v DePasquale,* 443 US 368, 380 (1979). . . . . . . . . . . . . . . . . . . . . . 32

*Giglio v United States*, 405 US 150 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*Gray v Netherland*, 518 US 152, 161-162 (1996). . . . . . . . . . . . . . . . . . . . . . . . 4

*Harpster v Ohio*, 128 F3d 322, 327 (CA6, 1997). . . . . . . . . . . . . . . . . . . . . . . . . 6

*Harrington v Richter*, 562 US 86, 111 (2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Hodge v Hurley*, 426 F3d 368, 386-387 (CA6, 2005). . . . . . . . . . . . . . . . . . . . . 42

*Holmes v South Carolina*, 547 US 319 (2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Horton v Zant,* 941 F 2d 1449, 1462 (CA11, 1991). . . . . . . . . . . . . . . . . . . . . . . 14

*House v Bell*, 311 F3d 767 (CA6, 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*In re Oliver*, 333 US 257, 270, n 25 (1948). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Jackson v Virginia*, 443 US 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Jemison v Foltz*, 672 F Supp 1002, 1007 (ED Mich, 1987). . . . . . . . . . . . . . . . . 20

*Johnson v Scott*, 68 F 3d 106, 109  n.4 (CA5, 1995). . . . . . . . . . . . . . . . . . . . . . 20

*Kimmelman v Morrison*, 477 US 365, 395, n.2 (1986).. . . . . . . . . . . . . . . . . . . . 16

*Kyles v Whitley*, 514 US 419 (1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Magill v Dugger*, 824 F2d 879, 889 (CA11, 1987).  . . . . . . . . . . . . . . . . . . . . . . 16

*Moldowan v City of Warren*, 578 F3d 351, 381 (CA6, 2009).  . . . . . . . . . . . . . . 34

*Nealy v Cabana*, 764 F2d 1173 (CA5, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Neder v United States,* 527 US 1, 7 (1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*People v Griffin*, 235 Mich App 27, 40 (1999), overruled in part on other grounds,
*People v Thompson*, 477 Mich 146, 148 (2007). . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v Jackson*, 292 Mich App 583, 601 (2011).. . . . . . . . . . . . . . . . . . . . . . . . 25

*Presley v Georgia,* 558 US 209 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . 29, 30, 33

*Press Enterprise Co v Superior Court of Cal, Riverside Cty*, 464 US 501 (1984)
(*Press Enterprise I*). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Ramonez v Berghuis*, 490 F 3d 482, 489 (CA6, 2007). . . . . . . . . . . . . . . 14, 18, 21

*Rose v Clark,* 478 US 570, 577-578 (1986).  . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Rompilla v Beard,* 545 US 374, 383 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Rust v Zent*, 17 F3d 155, 160 (CA6, 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Shackleford v Hubbard*, 234 F3d 1072, 1079, n.2 (CA9, 2000). . . . . . . . . . . . . . . 7

*Spalla v Foltz*, 788 F2d 400 (CA6, 1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Sims v Livesay,* 970 F2d 1575 (CA6, 1992). . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*Strickland v Washington*, 466 US 668 (1984). . . . . . . . . . . . . . . . . 8, 9, 10, 11, 21

*Towns v Smith,* 395 F 3d 251, 258 (CA6, 2005). . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Turner v United States*, 582 US ___ (2017). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*United States v Battle*, 25 F 3d 1050 (CA6, 1994). . . . . . . . . . . . . . . . . . . . . . . . 35

*United States v England,* 347 F2d 425 (CA 7, 1965). . . . . . . . . . . . . . . . . . . . . . 24

*United States v King*, 664 F2d 1171 (CA 10, 1981). . . . . . . . . . . . . . . . . . . . . . . 16

*United States v Taglia*, 922 F 2d 413 (CA7, 1991). . . . . . . . . . . . . . . . . . . . . 35, 36

*United States v Young*, 470 US 1, 17-19 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . 41

*United States ex rel. Williams v Twomey*, 510 F2d 634, 639 (CA7, 1975). . . . . . 16

*Waller v Georgia,* 467 US 39 (1984). . . . . . . . . . . . . . . . . . . . . . . . . 29, 31, 32, 33

*Weaver v Foltz*, 888 F2d 1097 (CA6, 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Weeks v Angelone*, 176 F3d 249, 258 (CA4, 1999), *aff'd*, 528 US 225 (2000). . . . 7

*Washington v Texas*, 388 US 14, 19; 87 S Ct 1920; 18 L Ed 2d 1019 (1967). . . . 16

*Williams v Anderson*, 460 F3d 789, 796 (CA6, 2006) . . . . . . . . . . . . . . . . . . . . . 5

*Washington v Smith*, 219 F3d 620, 630 (CA7, 2000). . . . . . . . . . . . . . . . . . . . 14, 20

vi

*Williams v Taylor*, 529 US 362, 405 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Wilson v Cowan,* 578 F2d 166, 167 (CA6, 1978). . . . . . . . . . . . . . . . . . . . . . . 10, 13

*Ylst v Nunnemaker*, 501 US 797, 803-804 (1991). . . . . . . . . . . . . . . . . . . . . . . . . 7

## **CONSTITUTIONAL CITATIONS**

US Const, Am V. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38, 40

US Const, Am VI.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 24

US Const, Am XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 22, 40

## <u>PROCEDURAL HISTORY</u>

Petitioner Anthony Alexander Maddox was convicted, by way of a jury trial, of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and received a sentence of life imprisonment for the murder conviction, and 2-5 years' imprisonment for the felon-in-possession conviction, and a consecutive to a 2-year term of imprisonment for the felony-firearm conviction.

On February 23, 2016, the Court of Appeals affirmed the convictions (Court of Appeals Docket # 324084), and the Michigan Supreme Court denied leave to appeal on September 26, 2016 (Michigan Supreme Court Docket # 153526). A Motion for Relief from Judgment was denied by Opinion and Order, dated April 23, 2018, and rehearing was denied on September 26, 2018. Leave to appeal was denied by the Court of Appeals on March 20, 2019 (Docket # 346486), and leave to appeal was denied by the Michigan Supreme Court on September 30, 2019, pursuant to an Order (Michigan Supreme Court Docket # 159555). Reconsideration was denied on February 4, 2020 (Michigan Supreme Court Docket # 159555).

Petitioner filed this timely petition for writ of habeas corpus pursuant to 28 USC § 2254. This Brief is in support of that petition.

1

## STATEMENT OF FACTS

The case involved a shooting inside of a home that resulted in the death of the victim. Petitioner was convicted by a jury trial of first-degree premeditated murder, MCL 750.316(1)(a), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. According to the Michigan Court of Appeals, the statement of facts were as follows:

> A jury convicted defendant of fatally shooting Casey Durham on September 27, 2012, in Highland Park. The shooting occurred at Antwon Wakefield's house. The prosecution presented evidence that defendant and Durham were in the living room of Wakefield's house, having a conversation about money that defendant owed to Durham. After the discussion ended, Wakefield and Durham engaged in further conversation when defendant emerged from an enjoining room and shot Durham. Christopher Stevens, who was upstairs, came downstairs after hearing three gunshots, and saw defendant holding a pistol pointed toward Durham's dead body. No one reported the incident to the police at that time. Two days later, Durham's severed head and an arm were found inside a house in Detroit, and his remaining body parts were subsequently found behind a different house. In December 2013, the police became aware of defendant as a suspect, and Wakefield, Stevens, and Wakefield's girlfriend, Samantha Herd, ultimately gave police statements about the shooting. The defense denied that defendant was the perpetrator, and argued that the prosecution witnesses had motives to lie, and that the police investigation was not reliable.

(*People v Anthony Alexander Maddox*, Court of Appeals Docket # 324084, p 1).

All direct appeals were denied (Court of Appeals Docket # 324084); (Michigan Supreme Court Docket # 153526), and all collateral appeals were also denied (Circuit Court, Opinion and Order, dated April 23, 2018); (Court of Appeals Docket # 346486); (Michigan Supreme Court Docket # 159555).

## STATEMENT REGARDING EXHAUSTION

Petitioner recognizes that he bears the burden of proving that he has exhausted his state remedies with respect to his habeas claims. *Rust v Zent*, 17 F3d 155, 160 (CA6, 1994). He also recognizes that taking his claim to the highest state court is a necessary element of exhaustion, even if review there is discretionary.

In support of his position that he has exhausted his constitutional claims, Petitioner states that he has presented his all claims contained within this Petition and Memorandum to the Michigan State Courts, including the Trial Court, the Michigan Court of Appeals, and Michigan Supreme Court. Petitioner asserts that at every stage of these proceedings the state courts were fairly presented with the substance of his federal constitutional claims and were given a full and fair opportunity to rule on his claims before he sought relief in this Court.

## **STATEMENT ON CUSTODY AND LACK OF PROCEDURAL DEFAULT**

Petitioner Maddox was sentenced on September 11, 2014, and his last pleading was denied by the State Supreme Court on February 4, 2020.  This Petition is being filed on February 10, 2020.

Petitioner complied with all applicable state procedural rules when arguing before the Wayne County Circuit Court, the Michigan Court of Appeals, and the Michigan Supreme Court.  Therefore, there is no procedural bar that could preclude this Court from fully adjudicating Petitioner's claims.  See, e.g., *Gray v Netherland*, 518 US 152, 161-162 (1996).

4

## STANDARD OF REVIEW

AEDPA's terms limit its application to claims that have been adjudicated on the merits by a state court. *Williams v Anderson*, 460 F3d 789, 796 (CA6, 2006) (citations omitted). When a claim has been "adjudicated on the merits in State court proceedings," AEDPA restricts the availability of federal habeas relief to two (2) circumstances. First, habeas relief is available when a state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." § 2254(d)(1). And second, habeas relief is available when a state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).

When fair-minded jurists could not disagree that a state court's merits decision conflicts with Supreme Court precedent, a federal court issue a writ of habeas corpus. *Harrington v Richter*, 562 US 86, 111 (2011). To satisfy this bar, a habeas petitioner is required to "show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v Richter*, 562 US at 103.

In *Williams v Taylor*, 529 US 362, 405 (2000), the Court explained that the "contrary to" and "unreasonable application" clauses in § 2254(d)(1) should be viewed independently. A state court decision will be "contrary to" clearly established Supreme Court precedent where the state court confronts a set of facts that are materially indistinguishable from a Supreme Court decision, and nevertheless arrives at a result different from the established precedent. *Brumley v Wingard*, 269 F3d 629, 638 (CA6, 2001). A state court decision is also "contrary to" established Supreme Court precedent where the state court "applies a rule that contradicts the governing law set forth" in those precedents. *Brumley v Wingard*, 269 F3d at 638. A state court decision is an "unreasonable application of" Supreme Court precedent when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts. *Id*.

The main claims presented in Petitioner's petition involve an unconstitutional verdict form, unconstitutional jury instructions, unreasonable evidentiary rulings which resulted in the denial of due process, and ineffective assistance of counsel, all of which involve mixed questions of law and fact. In a habeas case this Circuit applies the "unreasonable application" prong of § 2254(d)(1) to a mixed question of law and fact. *Harpster v Ohio*, 128 F3d 322, 327 (CA6, 1997).

6

When the state supreme court has denied review of a direct appeal, the federal district court should "look through the unexplained [state supreme court] decision to the last reasoned decision, the state appellate court's decision, as the basis for the state court's judgment." *Ylst v Nunnemaker*, 501 US 797, 803-804 (1991), *quoted in Shackleford v Hubbard*, 234 F3d 1072, 1079, n.2 (CA9, 2000). The Michigan Supreme Court twice denied leave to appeal. This Court should therefore look to the decision of the Michigan Court of Appeals with respect to the mandates of § 2254(d).

By its own terms § 2254(d) applies only to claims already adjudicated on the merits in State court proceedings. *Appel v Horn*, 250 F3d 203, 210 (CA3, 2000). If a claim was properly preserved, but the state court has not reached the merits of the claim thereafter presented to a federal habeas court, the deferential standards provided by AEDPA do not apply. *Id*. See also *Weeks v Angelone*, 176 F3d 249, 258 (CA4, 1999), *aff'd*, 528 US 225 (2000)(when a petitioner has properly presented a claim to the state court but the state court has not adjudicated the claim on the merits, however, our review of the questions of law and mixed questions of law and fact is *de novo*). In such an instance, the court must conduct a *de novo* review over pure legal questions and mixed questions of law and fact, as a reviewing court would have done prior to the enactment of AEDPA. *Appel v Horn*, 250 F3d at 210.

7

For example, in *Appel* the defendant presented claims of both constructive denial of counsel and ineffective assistance of counsel to the state supreme court. *Appel v Horn*, 250 F3d at 210. However, the state supreme court's analysis always characterized the claim as alleging ineffective assistance of counsel, and not constructive denial of counsel. *Id*. The two claims, of course, are different. The ineffective assistance of counsel claim must be evaluated from a federal constitutional basis under the standards set forth in *Strickland v Washington*, 466 US 668 (1984).

In Petitioner's case, the claims of denial of effective assistance of counsel, denial of due process, erroneous evidentiary rulings, and denial of a fair trial were presented to the Michigan Court of Appeals and Michigan Supreme Court, after his motion for new trial was denied by the trial court. As the arguments in this Petition and Supporting Memorandum show, Petitioner is in custody in violation of the Constitution of the United States and is entitled to relief under 28 USC § 2254.

I.   **TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE FAILED TO FILE A NOTICE OF ALIBI DEFENSE, OR CONDUCT A REASONABLE INVESTIGATION INTO MR. MADDOX'S POTENTIAL ALIBI DEFENSE.**

The federal constitution guarantees a criminal defendant the right to the effective assistance of counsel. US Const Amends VI, XIV. The test for determining ineffective assistance of counsel if twofold: whether counsel's performance was deficient, and if so, whether his deficient performance prejudiced the defense. Counsel's performance is deficient if, "under an objective standard of reasonableness," he "made an error so serious that he was not functioning as an attorney as guaranteed by the Sixth Amendment." *Strickland v Washington*, 466 US at 688.

A defendant is prejudiced where "there is a reasonable probability that, absent the errors, the fact-finder would have had a reasonable doubt respecting guilt." *Strickland v Washington*, 466 US at 695. While a defendant must overcome the presumption that counsel's actions were based on reasonable trial strategy, merely labeling these errors "strategy" does not shield his performance. *Cave v Singletary*, 971 F2d 1513 (CA11, 1992).

9

Counsel will be found ineffective if the "strategic" decision was not a sound or reasonable one. Counsel's behavior is not objectively reasonable if his strategy is predicated on ignorance of the law, inadequate preparation, or a misreading of controlling legal authority. <u>See</u>, *Anderson v Johnson*, 338 F3d 382 (CA5, 2003); *Blackburn v Foltz*, 828 F 2d 1177, 1187 (CA6, 1987).

As *Strickland* and its progeny make clear, uninformed decisions cannot be considered reasonable trial strategy. *Strickland* requires counsel "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US at 691. A competent lawyer has the duty to make every effort to persuade a witness who possesses material knowledge of an event to testify, and if unsuccessful, to subpoena that witness to court. Failure to call witnesses who are vital to the defense is not a small mistake.

In a case such as this one, where the prosecution's entire case rests on the testimony of the two civilian witnesses called by the prosecutor, defense counsel's failure to call known witnesses who are available to testify that the defendant was elsewhere at the time of the offense deprives the defendant of effective assistance of counsel. *Wilson v Cowan,* 578 F2d 166, 167 (CA6, 1978). Counsel's failure to take the proper steps to protect his client's rights constitutes ineffective assistance.

"[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland v Washington*, 466 US at 690-691. <u>See also</u>, *Sims v Livesay,* 970 F2d 1575 (CA6, 1992)(defense counsel failing to investigate is not reasonable professional judgment).

In this case, the record is clear that defense counsel did not make an informed strategic choice not to call potential alibi witness Crystle White, because it is clear that counsel failed to investigate and interview Ms. White, and failed to recognize that she could have offered testimony that contradicted the testimony of the prosecutor's witnesses, who testified that Mr. Maddox committed the crimes charged. In support of this assertion, Ms. White has executed a sworn affidavit attesting the circumstances of his conversations with defense counsel, as well as what he would have testified to had he been called as a defense witness at trial:

I, CRYSTLE WHITE, being first duly sworn, say that the following is true to the best of my knowledge and belief:

1.    I am a friend of the above named defendant, Anthony Maddox.

11

2.     On September 27, 2012, at approximately 2:00 p.m., Mr. Maddox called me up and asked if he could come over to my house to hang out.

3.     I agreed, and Mr. Maddox arrived at my house at approximately 3:00 p.m.

4.     Mr. Maddox ate dinner with myself and my children, who were 1 and 4 at the time.

5.     After dinner, we watched a movie on DVD, and then watched TV until 11:00 p.m., when I went to bed.

6.     When I went to bed, Mr. Maddox was still in the living room watching TV, and when I got up to use the restroom at 2:00 or 3:00, Mr. Maddox was asleep on the living room couch.

7.     I woke the next day (September 28, 2012) at approximately 6:30 a.m., and proceeded to wake Mr. Maddox, who was still asleep on the couch.

8.     We both left the house at approximately 7:00 a.m., and went our separate ways.

9.     I was never contacted by anybody representing Mr. Maddox in his criminal case about the fact that I was with him during the entire evening of September 27, 2012.

10.     Had I been contacted, I would have agreed to testify on Mr. Maddox's behalf because I know for a fact that he was with me the entire evening of September 27, 2012.

11.   I am willing to testify to these statements under oath, if necessary.

"Defense Counsel must investigate all apparently substantial defenses available to the defendant and must assert them in a timely manner." *Beasley v United States,* 491 F 2d 687 (CA6, 1974).   A competent lawyer has the duty to make every effort to persuade a witness who possesses material knowledge of an event to testify.   Failure to call witnesses who are vital, crucial, and material to the defense is not a small mistake.   In a case such as this one, where the prosecution's entire case rested on the testimony of the civilian witnesses called by the prosecutor, defense counsel's failure to call a known alibi witness who was available to testify deprived Petitioner Maddox of effective assistance of counsel. *Wilson v Cowan,* 578 F 2d at 167.

This is a case where counsel failed to pursue a potential witness whose testimony could have significantly benefitted his client.   Hence, the deficiency was in Petitioner Maddox's attorney being ill equipped to assess Ms. White's credibility or persuasiveness as a witness, or to evaluate and weigh the risks and benefits of putting him on the stand at the time when he made the decisions affecting his trial strategy. See, *Bryant v Scott*, 28 F 3d 1411, 1419 (CA5, 1994); *Towns v Smith,* 395 F 3d 251, 258 (CA6, 2005)(noting that the duty to investigate "includes the obligation

to investigate all witnesses who may have information concerning his or her client's guilt or innocence"). Yet counsel failed to formally interview Ms. White outside of the courthouse prior to trial, and therefore, could not have developed a reasonable trial strategy regarding Ms. White as a potential alibi witness. A conclusion based on this type of limited investigation is ineffective assistance of counsel. See, e.g., *Ramonez v Berghuis*, 490 F 3d 482, 489 (CA6, 2007).

Counsel must "at a minimum . . . interview potential witnesses and . . . make an independent investigation of the facts and circumstances of the case." *Nealy v Cabana*, 764 F2d 1173 (CA5, 1985). Trial counsel owed Petitioner Maddox "a duty to make a reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." *Strickland v Washington*, 466 US at 691. "A failure to investigate can certainly constitute ineffective assistance." *Washington v Smith*, 219 F3d 620, 630 (CA7, 2000). Counsel simply had no reason to believe that an investigation was unnecessary, and he owed a duty at least to investigate what Ms. White would potentially claim at trial. While "the duty to investigate does not force defense lawyers to scour the globe on the off-chance something will turn up . . .", *Rompilla v Beard,* 545 US 374, 383 (2005), "[a]ttorneys do however, have a duty to make all reasonable efforts to learn what they can about a case." *Rompilla v Beard*,

14

545 US at 385.  "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v Smith,* 395 F 3d at 258.  A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate . . . options and make a reasonable choice between them." *Horton v Zant,* 941 F 2d 1449, 1462 (CA11, 1991).  Inattention or negligence, as opposed to reasoned strategic judgment, is inexcusable.  See, *Sims v Livesay,* 970 F 2d at 1580-1581.

The failure to produce Ms. White in the present case resulted from trial counsel's apparent disinterest in pursuing his defense in this case, which clearly amounts to ineffective assistance of trial counsel.  Clearly, this witness was not overly difficult to locate since she was acquainted with Petitioner Maddox.  There is no indication that the proposed testimony would have potentially hurt the case, because it would have disclosed to the jury that Petitioner Maddox was elsewhere at the time of the killing.  Ms. White had no obvious motive to lie, and her testimony, if believed, would have directly refuted the claim that Petitioner Maddox committed the crime.

Under the circumstances, one would have expected defense counsel to do as much as humanly possible to ensure that the jury heard this testimony.  There is no way humanly possible to assert that defense counsel's failure to call Petitioner

Maddox's only alibi witness was a strategic decision. This was also a violation of Petitioner Maddox's right to present a defense. *Washington v Texas*, 388 US 14, 19 (1967); *Chambers v Mississippi*, 410 US 284, 294 (1973).

As to the prejudice prong of *Strickland*, there is clearly a reasonable probability here that counsel's failure to produce the alibi witness at issue affected the outcome of the proceeding. *Brown v Myers*, 137 F3d 1154, 1156 (CA9, 1998). Prejudice is adequately shown where a defendant demonstrates that he might have lost a possible witness. The witness testimony, if believed, would have made it likely that the jury would have concluded that Petitioner Maddox never participated in the crime charged. A defense attorney's otherwise "zealous" attack on the prosecution's case does not assure that the defendant's rights have been fully or adequately protected, particularly where it is clear that the attorney has not done the necessary investigation and preparation prior to trial. *United States v King*, 664 F2d 1171 (CA10, 1981).

Not all prejudice from lack of preparation can be quantified, nor does it need be. Where defense counsel proceeds to trial unprepared, ". . . the defendant is in effect deprived of counsel altogether, and thereby deprived or any meaningful opportunity to subject the State's evidence to adversarial testing." *Kimmelman v Morrison*, 477 US 365, 395, n.2 (1986)(concurring opinion by Powell, J.). The

16

strength of the prosecution's case cannot excuse the admittedly deficient performance of counsel.  Even the most guilty defendant is guaranteed an attorney who has the opportunity to prepare and present his case.

In judging counsel's conduct "much depends on the nature of the charge, of the evidence known to be available to the prosecution, of the evidence susceptible of being produced at once or later by the defense, and of the experience and capacity of defense counsel." *United States ex rel. Williams v Twomey*, 510 F2d 634, 639 (CA7, 1975).  In this case, trial counsel was retained, with adequate resources available to him, in a case in which the issues were clearly defined and focused.  And, as has been noted, an important witness was available to support the only defense which would have made sense to the jury. Even under circumstances far less conducive to effective advocacy (cases involving indigent defendants) and far more meager evidentiary resources upon which to draw, courts have not hesitated to find that the failure to develop and present testimony helpful to the defense constituted ineffective assistance of counsel. See, *Magill v Dugger*, 824 F2d 879, 889 (CA11, 1987).

Trial counsel in this case simply failed to meet such minimum standards of performance, with the result that there was a wholesale failure of the adversary process.  This failure of advocacy cannot be excused as a matter of "strategy."  As the

17

Court explained in *Cave v Singletary,* 971 F2d at 1518, a case in which trial counsel's overinflated view of her own abilities led her to pursue a strategy that was clearly doomed from the beginning, and to forego efforts to prepare for the (inevitable) failure of that strategy. Given the trial evidence, defense counsel's theory was not even arguable. It was doomed from the start and is so implausible that it cannot be characterized as "strategy" or as a defense. Had defense counsel here made a thorough presentation of the facts, or understood the significance of the state's evidence and been adequately prepared to meet it, the jury would have had a fundamentally different picture of the facts of the case, and would have reached a different verdict, because the jury would have understood the true facts of the case. This is, of course, the "prejudice" which defendant suffered from his counsel's ineffectiveness -- because if the true facts had been properly developed, as trial counsel could have, and as they now have been, it would have been immediately apparent to the jury that acquittal was appropriate. The actual evidence of Petitioner Maddox's guilt in this case is not overwhelming. The prosecutor presented no unbiased witnesses as to the issue of Petitioner Maddox's involvement, as they were all given special consideration, and even plea deals, in exchange for their testimony. This case ultimately boiled down to a credibility match. "All it would have taken is

for 'one juror [to] have struck a different balance' between the competing stories." *Ramonez v Berghuis*, 490 F3d at 491. Hence, defense counsel's failure to advance a meaningful defense, sufficiently creates a reasonable probability that at least one juror would have struck a different conclusion.

The Sixth Circuit in *Foster v Wolfenbarger*, 687 F3d 702 (CA6, 2012) addressed a similar issue where the very same defense attorney failed to properly present an available alibi defense. Mr. Foster was charged with first-degree premeditated murder, and felony-firearm in connection with a fatal shooting on November 17, 1998. In 2000, a jury convicted Mr. Foster of second-degree murder and felony-firearm. The trial court sentenced Mr. Foster, as a third habitual offender, to consecutive prison terms of 30 to 50 years for the murder conviction and two years for the felony-firearm conviction. In 2012, the Sixth Circuit Court of Appeals granted a conditional writ of habeas corpus based on its determination that Foster's trial counsel was ineffective for failing to raise and investigate an alibi defense. *Foster v Wolfenbarger,* 687 F3d at 704; 710.

In this case, as in *Foster v Wolfenbarger*, defense counsel did nothing to secure the testimony of the alibi witness at trial. The prejudice inquiry is not the same as the sufficiency of the evidence analysis. This Court need not find "that a reasonable jury

19

*could not* have reached the same verdict if counsel had performed effectively," *Johnson v Scott*, 68 F 3d 106, 109  n.4 (CA5, 1995)(emphasis added), or that the defendant "*could not* have been convicted." *Foster v Lockhart*, 9 F 3d 722, 726 (CA8, 1993)(emphasis added).  The question is whether the evidence from the witnesses that were not called, when taken as a whole, might well have influenced the jury's decision about Petitioner Maddox's culpability, and whether the likelihood of a different result if the evidence had gone in is sufficient to undermine confidence in the outcome of the case.

In *Kyles v Whitley*, 514 US 419 (1995), the US Supreme Court stated: "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial understood as a trial resulting in a verdict worthy of confidence."  Petitioner Maddox "need not prove prejudice by a preponderance of the evidence[,]" *Jemison v Foltz*, 672 F Supp 1002, 1007 (ED Mich, 1987), all Petitioner Maddox needs to do is establish reasonable doubt. *Washington v Smith*, 218 F3d at 634.

Considering the emphasis placed on the three prosecution witnesses' testimony at trial, and the fact that the prosecutor's argument for guilt was based on the false premise that Petitioner Maddox was present at the time of the killing, "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v Washington*, 466 US at 694. Trial counsel in this case simply failed to meet such minimum standards of performance, with the result that there was a wholesale failure of the adversary process. Given the trial evidence, defense counsel's theory was not even arguable. It was doomed from the start and is so implausible that it cannot be characterized as "strategy" or as a defense.

This case ultimately boiled down to a credibility match. "All it would have taken is for 'one juror [to] have struck a different balance' between the competing stories." *Ramonez v Berghuis*, 490 F3d at 491. Hence, defense counsel's failure to advance a meaningful defense, sufficiently creates a reasonable probability that at least one juror would have struck a different conclusion.

Accordingly, this Court must grant the writ.

## II.   TRIAL COUNSEL'S REPRESENTATION AT TRIAL FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE FAILED TO CALL A PROPER FOUNDATIONAL WITNESS TO INTRODUCE DEFENSE EVIDENCE.

Counsel for Mr. Maddox questioned the officer-in-charge about cell phone records and a report that allegedly portrayed the phone activity for Mr. Durham's (the victim) from the cellular towers in the area (Transcript, 8/20/14, pp 62-66).  Defense counsel requested that the records be admitted as Defense Exhibit A, ostensibly to establish that Mr. Durham was not present at the house as depicted by the prosecution witnesses (Transcript, 8/20/14, p 66).  The prosecutor objected because the report was generated by a federal ATF agent, rather than the officer-in-charge (Transcript, 8/20/14, p 65), and this Court precluded the admission of the records, stating that the foundational requirement necessitated that the report be introduced through the proper witness (Transcript, 8/20/14, p 66).  Defense counsel never revisited the issue, and the report and phone records were never admitted as evidence.   This was ineffective representation.

A defendant has a due process right to present a recognized defense to a criminal charge. US Const, Am XIV; *Holmes v South Carolina*, 547 US 319 (2006). A defendant also has a due process right to effectively cross-examine a prosecution

witness. *Douglas v Alabama*, 380 US 415 (1965); <u>see also</u> *Davis v Alaska*, 415 US 308 (1974) (state rule protecting confidentiality of juvenile delinquency adjudications had to yield to right to cross-examine witness concerning possible bias for trial testimony due to probationary status for same offense).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment…or in the Compulsory Process or Confrontation clauses of the Sixth Amendment…the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.'" *Crane v Kentucky*, 476 US 683, 690 (1986)(holding that the state court erred in foreclosing the defendant's efforts to introduce testimony about the unreliability of his confession).  Although the trial court appeared to maintain that the "overwhelming evidence" against Mr. Maddox makes an acquittal unlikely on retrial, it is beyond the capability of any reviewing court to actually know for certain whether a rational jury would credit or discredit the testimony of Vinson, and the two identifying witnesses on retrial, if presented with this evidence.  Defense counsel's error in this case was detrimental to Petitioner Maddox's ability to present a complete defense (the records establishing the location of the victim to impeach the prosecutor's witnesses).  Since such an error is a violation of due process, this Court must grant the writ.

### III.  PETITIONER WAS DENIED A FAIR TRIAL WHEN THE COURT, IN ITS FINAL INSTRUCTIONS TO THE JURY, REJECTED THE REQUEST FOR THE ADDICT-INFORMER INSTRUCTION, THEREBY DENYING HIM THE RIGHT TO A PROPERLY INSTRUCTED JURY.

Under US Const Am VI, it is the duty of the trial court to instruct the jury on the law in a case. *Francis v Franklin,* 471 US 307, 316 (1985).  A defendant is entitled to a twelve person jury and the presence and superintendence of a judge to instruct the jury on the law and advise them on the facts, and a unanimous verdict. Consistent with this right is the right of the Defendant to a properly instructed jury. *United States v England,* 347 F2d 425 (CA7, 1965).  Trial Judges have the responsibility to instruct a jury regarding the general features of the case, define the offense, and explain what must be proven to establish that offense. Jury instructions must include all of the elements of the charged offense, and must not exclude material issues, defenses, and theories if there is evidence to support them. *United States v England, supra* at 430.

During discussions concerning proposed jury instructions, defense counsel requested the addict-informer instruction regarding witnesses Antwon Wakefield, Christopher Stevens, and Antwon Wakefield's girlfriend, Samantha Herd.  After hearing arguments from the parties, this Court declined to give this instruction,

stating that there was no evidence to support the instruction as to any of the witnesses (Transcript, 8/26/14, pp 82-86). This Court erred failing to give the addict-informant jury instruction in its final instructions to the jury.

When an addict-informant provides the only testimony against a defendant, the defendant is entitled to a jury instruction cautioning that the jurors should consider the addict-informant's information with special scrutiny. *People v Jackson*, 292 Mich App 583, 601 (2011). While occasional drug use does not warrant the instruction, this instruction should be given if the evidence clearly indicates that the witness was an addict. *People v Griffin*, 235 Mich App 27, 40 (1999), overruled in part on other grounds, *People v Thompson*, 477 Mich 146, 148 (2007).

During closing argument, the prosecutor indicated in detail how all three witnesses were addicts. For instance, the prosecutor relayed how Ms. Heard was heavily addicted to heroin, was involved in drug trafficking, was engaged in prostitution to support her habit, and was addicted to methadone, even as she was testifying at trial (Transcript, 8/26/14, pp 140-141). The prosecutor further pointed out that Mr. Stevens was addicted to cocaine, crack cocaine, and heroin, and that he, along with Antwon Wakefield and Ms. Heard engaged in a lifestyle surrounding the use of the drugs, sex and prostitution (Transcript, 8/26/14, pp 142; 144). In addition,

the prosecutor also introduced evidence that Mr. Stevens and Mr. Wakefield received special treatment and deals from the prosecutor's office, in exchange for the "information" each gave to the prosecutor, in an effort to created a case against Mr. Maddox (Transcript, 8/21/14, pp 26-28; 104-106)

Although these informants stated that they are no longer addicted to drugs, there was evidence to show that they were using drugs during the time that they interacted with police and the prosecutor, and there was evidence that Ms. Herd was likely still addicted to drugs at the time of trial. There was no other testimony linking Petitioner to the crime. Since there was sufficient evidence to show that the informants were addicts at the time of there "cooperation" with the police and the prosecutor's office, this Court's decision was clearly erroneous.

Since the Court's failure to give the requested instruction dealt with a critical issue at trial, it cannot be concluded that the error was harmless because it was prejudicial to Petitioner Maddox. As a result, this Court must grant the writ.

26

## IV. THE JOINDER OF THE MURDER COUNT AND THE MUTILATION COUNT INTO ONE PROSECUTION DEPRIVED PETITIONER OF A FAIR TRIAL, AS THE ALLEGED ACTS OCCURRED ON DIFFERENT NIGHTS, IN DIFFERENT CITIES, AND THERE WAS NO SHOWING THAT THE ACTS WERE A SERIES OF CONNECTED ACTS.

While "federal habeas corpus review does not lie for errors of state law." *Estelle v McGuire*, 502 US 62, 67 (1991), habeas review will include state court rulings if there is also a showing of a constitutional violation. *Clemmons v Sowders*, 34 F3d 352, 357 (CA6, 1994). "When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v Mitchell*, 329 F3d 496, 512 (CA6, 2003).

Petitioner was denied a fair trial when the prosecution was permitted to join all the murder and mutilation acts in this case into a single prosecution, as the jury heard testimony regarding different acts that happened under different circumstances, at entirely different times and in different cities. A defendant has the right to have separate trials to avoid the unquestionably unfair prejudice arising from the jury's exposure to such evidence. The alleged acts were not said to have occurred on the same night, there are no allegations that the offenses charged were related, or a series of connected acts, or even acts constituting part of a single scheme or plan.

27

The incidents that were joined with this case are completely different.  In this case, Mr. Maddox was charged with fatally shooting Casey Durham on September 27, 2012, at Antwon Wakefield's house in Highland Park.  Two days later, Durham's severed head and an arm were found inside a house in Detroit, and his remaining body parts were subsequently found behind a different house.  While the incidents may have involved the same victim, they happened at different times and under different circumstances. Mr. Maddox's right to have separate trials on charges that were not shown to be the same conduct, series of connected acts, or part of a single scheme, is beyond dispute.  In no way were the offenses part of a series of connected acts related to the charges or acts constituting part of a single scheme or plan.  In our system of jurisprudence, the courts try cases rather than persons, and thus a jury must look only to the evidence of the events in question, not a defendant's other acts in reaching its verdict.

Accordingly, this Court must grant the writ.

## V.    THE COURT'S EXCLUSION OF MEMBERS OF THE PUBLIC FROM THE COURTROOM DURING THE FIRST DAY OF TRIAL VIOLATED PETITIONER'S SIXTH AMENDMENT RIGHT TO A PUBLIC TRIAL.

Mr. Maddox argued that he was denied the constitutional right to a public trial when the trial court announced that, prior to the potential jurors entering, only two members of the public, one from each party, could remain in the courtroom during *voir dire* (Transcript, 8/19/14, pp 10-11).  This was error requiring reversal.  In the alternative, defense counsel was ineffective for failing to object.

The Sixth Amendment directs that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."  US Const, Am VI.  The United States Supreme Court has emphasized the vital concerns underlying the right to a public trial: "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions. . . ." *Waller v Georgia,* 467 US 39, 46 (1984), quoting *In re Oliver*, 333 US 257, 270, n 25 (1948).

In *Presley v Georgia,* 558 US 209 (2010), the United States Supreme Court held the trial court reversibly erred when it excluded a single family member of the defendant from the courtroom during the *voir dire* on the basis the judge would not

29

allow the family member to sit among and "intermingle" with the jury panel. *Presley v Georgia,* 558 US at 210.  Although the right to a public trial is not absolute, but that exceptions to that right are strictly confined and must be articulated by the trial court before a courtroom can be closed for voir dire:

> While the accused does have a right to insist that the voir dire of the jurors be public, there are exceptions to this general rule. "[T]he right to an open trial may give way in certain cases to other rights or interests, such as the defendant's right to a fair trial or the government's interest in inhibiting disclosure of sensitive information." *Waller*, [*Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984)] 467 U.S., at 45, 104 S.Ct. 2210. "Such circumstances *will be rare*, however, and the balance of interests must be struck with special care." *Ibid*. *Waller* provided standards for courts to apply before excluding the public from any stage of a criminal trial:
>
>> "[T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, *the trial court must consider reasonable alternatives to closing the proceeding*, and it must make findings adequate to support the closure." *Id*., at 48, 104 S.Ct. 2210.

*Presley v Georgia,* 558 US at 213-214 (Emphasis added).

Trial courts are obligated to take every reasonable measure to accommodate public attendance at criminal trials.  The Supreme Court has set forth the standard for excluding

the public from the courtroom during any stage of a criminal trial: "the party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure." *Waller v Georgia,* 467 US at 48.

If this Court felt that there were legitimate concerns that warranted closure of the courtroom to the public, the Court was required to make findings: "[I]n those cases, the particular interest, and threat to that interest, must be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered." *Press Enterprise Co v Superior Court of Cal, Riverside Cty*, 464 US 501, 510 (1984) (*Press Enterprise I*).  All prongs of the test must be satisfied to close the courtroom to the public: "Even with findings adequate to support closure, the trial court's orders denying access to voir dire testimony failed to consider whether alternatives were available to protect the interests of the prospective jurors that the trial court's orders sought to guard.  Absent consideration of alternatives to closure, the trial court could not constitutionally close the *voir dire*." *Press Enterprise I*, *supra* at 511.

This Court failed to make findings adequate to support closure, but even if it had made such findings, there is no indication that the Court's closure of the courtroom was

"no broader than necessary to protect that interest." *Waller v Georgia,* 467 US at 48. If the Court closed the courtroom to prevent, for example, relatives of the defendant from somehow intimidating the jury, then the Court should have limited the closure to these people alone. Instead, this Court partially closed the courtroom to members of the public. As a result, the courtroom's closure was not "narrowly tailored" to serve any conceivable interest, as required by *Presley*, *Waller* and *Press Enterprise I*, *supra* at 510.

Even assuming defense counsel consented to the closure, the right to a public trial is a right personal to the defendant, and thus, defense counsel cannot waive the right. *Gannett Co v DePasquale,* 443 US 368, 380 (1979). The Supreme Court has made clear that the guarantee of a public trial, like the others enumerated, is personal to the accused. *Gannett Co v DePasquale,* 443 US at 380. There is nothing in this record to support the proposition that Mr. Maddox personally waived his right to a public trial.

A violation of the right to a public trial is structural error, which is "a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *Arizona v Fulminante,* 499 US 279, 310 (1991). Such errors remove basic protections for defendants, such that "a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v Clark,* 478 US 570, 577-578

(1986). Structural errors are not subject to harmless-error analysis, and warrant **automatic reversal**. *Neder v United States,* 527 US 1, 7 (1999). The denial of the right to a public trial belongs to the "very limited class of cases" categorized as structural error. *Neder*, *supra* at 8. Prejudice also need not be shown, as this requirement is directly contrary to US Supreme Court precedent. *Presley* makes explicit that the right to a public trial does not depend upon the defendant's assertion of that right: "The conclusion that trial courts are required to consider alternatives to closure even when they are not offered by the parties is clear. . . . The public has a right to be present **whether or not any party has asserted the right**." *Presley v Georgia,* 558 US at 724-725 (emphasis added). The *Presley* decision, which was issued *per curiam*, stands for the clear proposition that the responsibility for ensuring the right to a public trial rests on the shoulders of the trial judge, not the defendant.

The courtroom closure to the public violated Mr. Petitioner's Sixth Amendment right to a public trial. Since violation of the public trial right is a structural error, Petitioner is entitled to automatic reversal. See, *Waller, supra* at 49-50; *Campbell v Rice*, 408 F 3d 1166, 1171-1172 (CA9, 2005) [noting that violation of the right to a public trial is one of those rare constitutional errors that requires automatic reversal because it amounts to a structural defect].

33

## VI.   PETITIONER WAS DEPRIVED OF HIS RIGHT TO DUE PROCESS BECAUSE THE PROSECUTION VIOLATED *BRADY/GIGLIO* BY WITHHOLDING INFORMATION BEARING ON THE CREDIBILITY OF THE OFFICER-IN-CHARGE, WHO WAS LATER CHARGED WITH AND CONVICTED OF TAMPERING WITH EVIDENCE.

A prosecutor "violates the Constitution's Due Process Clause if it withholds evidence that is favorable to the defense and material to the defendant's guilt or punishment." *Turner v United States*, 582 US __ (2017).  Withholding evidence, the Court noted, puts the government "in the role of an architect of a proceeding that does not comport with standards of justice." *Brady v Maryland*, 373 US 83, 88 (1963).  See also, *Giglio v United States*, 405 US 150 (1972).  The duty to disclose exculpatory and impeachment evidence extends to law enforcement officers working with prosecutors, *Moldowan v City of Warren*, 578 F3d 351, 381 (CA6, 2009).

Much of the evidence against Mr. Maddox came from the officer-in-charge, Sgt. Alex Vinson, including the witness statements from Mr. Wakefield and Mr. Stevens (Transcript, 8/20/14, pp 54-61).  Following the conviction in this case, Sgt. Vinson was charged with numerous counts of tampering with evidence, obstruction of justice, misconduct in office, as well as larceny in a building, larceny and larceny by conversion. The case involved Sgt. Vinson removing an expensive, German-made watch from a murder victim, and replacing it with a cheap imitation.

34

Following a plea deal, Sgt. Vinson was convicted on charges of Tampering With Evidence - Criminal Case Punishable by More Than 10 Years, and Larceny - $200 00 or More But Less Than $1,000 00. On April 11, 2016, Vinson was sentenced to 3 years probation. Evidence that Sgt. Vinson violated the law could have been used to impeach his credibility, and would have been material to the case.

The Sixth Circuit has weighed in on police corruption convictions warranting a new trial in *United States v Battle*, 25 F 3d 1050 (CA6, 1994). In that case, after being convicted of a two-count drug conviction, the defendant contested the sufficiency of the evidence claimed error in the giving of a supplemental jury charge in his direct appeal. After the appeal was concluded, the defendant moved the district court for a new trial on the basis of evidence that the government's chief witness had become the subject of a federal drug investigation. The witness later pled guilty to charges that arose out of the corruption investigation.

While stating that (at that time) newly discovered impeachment evidence is not enough to require a new trial, the majority in *Battle* noted that the government's chief witness' testimony was "pivotal", and as such, rendered the "impeachment" evidence "material", thereby warranting a new trial. This point was first illustrated by the Seventh Circuit in *United States v Taglia*, 922 F 2d 413 (CA7, 1991), where the majority stated:

35

> If the government's case rested entirely on the uncorroborated
> testimony of a single witness who was discovered after trial
> to be utterly unworthy of being believed because he had lied
> consistently in a string of previous cases, the district judge
> would have the power to grant a new trial in order to prevent
> an innocent person from being convicted. The interest of
> justice, the operative term of Rule 33, would require no less.

*United States v Taglia*, 922 F 2d at 415.

In this case, the evidence concerning the conviction of the officer-in-charge of this case is so powerful that, if it were to be believed by the trier of fact, it could render the testimony of Sgt. Vinson totally incredible and not worthy of belief. Petitioner Maddox presented a defense that was corroborated by a defense witness, whereby he claimed that witness Antwon Wakefield (the witness Sgt. Vinson utilized to tie Petitioner Maddox to the crimes in this case) was lying on Petitioner Maddox in an effort to benefit himself. According to the defense theory, Petitioner Maddox was an innocent party whose only role was that he unwittingly was involved with Mr. Wakefield and the other drug abusers. Since no trial witnesses corroborated Sgt. Vinson's account of how he came to extract the information about Petitioner Maddox's involvement from Wakefield (and Mr. Stevens), the impeachment evidence in this case is "material" and warrants a new trial. There is a real likelihood that the jury would have acquitted Petitioner Maddox, knowing that Sgt. Vinson was convicted on charges of larceny and tampering with evidence.

36

Wakefield and Stevens and their testimony came directly from Vinson's involvement in this case.  Without this testimony, the only evidence linking Petitioner Maddox to the case was Ms. Samantha Herd, a witness who was heavily involved in drugs, and quite possibly was under the influence of drugs while testifying in this case. See, (Transcript, 8/26/14, pp 140-141).

Under the unusual circumstances of this case, it cannot be said with confidence where the truth lies at this point.  Only a new trial, with introduction of the newly discovered evidence, can answer that question.  This Court must grant the writ.

## VI.   PETITIONER WAS DENIED DUE PROCESS OF LAW WHEN HE WAS CONVICTED BASED ON INSUFFICIENT EVIDENCE.

Under the United States constitutional guarantee of due process of law, the prosecution bears the burden of proof at trial to present legally sufficient evidence on all of the essential elements of a charged offense. US Const, Am V, the test for appellate review on sufficiency is stated in *Jackson v Virginia*, 443 US 307 (1979).  Under the *Jackson* standard, the trial court must, viewing the evidence in a light most favorable to the prosecution, determine whether sufficient evidence was presented to enable a rational trier of fact to find proof beyond a reasonable doubt on all the elements. *Weaver v Foltz*, 888 F2d 1097 (CA6, 1989); *Spalla v Foltz*, 788 F2d 400 (CA6, 1985).

The defense theory in the case was that the prosecution witnesses had motives to lie, and that the police investigation was not reliable, and that identity and premeditation had not been proven.  Even if it is assumed that the prosecution's evidence, viewed most favorably to them, sufficiently presented a fact question for the jury on whether Petitioner committed the shooting, the evidence was insufficient that he had the requisite intent for the homicide.

Other than the alleged "bragging" testimony that came from witness Wakefield, no direct evidence presented in this case that Petitioner Maddox planned or even anticipated that a homicide would occur.  At no point did anyone assert there was any

discussion concerning a plan to shoot anyone, let alone any express comments that a homicide was to occur.

Accordingly, the trial judge should have directed a verdict of acquittal on the count of first-degree murder. This Court should find that Petitioner Maddox was denied his right to Due Process of law, and grant his request for habeas corpus relief.

## VIII. PETITIONER WAS DENIED A FAIR TRIAL BECAUSE THE PROSECUTOR ENGAGED IN BLATANT PROSECUTORIAL MISCONDUCT.

The trial was infected by misconduct on the part of the prosecutor. A defendant's due process right to a fair trial is implicated where the prosecutor resorts to improper and unjust methods. *Donnelly v Christoforo*, 416 US 637, 642 (1974). A prosecutor should "prosecute with earnestness and vigor" . . . . "But, while he may strike hard blows, he is not at liberty to strike foul ones." *Berger v United States*, 295 US 78, 88 (1935). The prosecutor, therefore, must see to it that the guilty are punished and the innocent remain free. To accomplish this dual function, it is necessary that the prosecutor assure the defendant a fair trial and be mindful of his or her role as an impartial official. In this regard, intentional prosecutorial misconduct can result in a reversal of the resulting criminal conviction. *Boyle v Million,* 201 F3d 711, 717-718 (CA6, 2000).

During the questioning of a police sergeant, the prosecutor urged the jury to convict him to help stop the senseless violence in Wayne County by referencing crime statistics. However insignificant the jury may have considered the prosecutor's remarks, the conduct was directly contrary to the ban on bringing up the implication that the jury should convict as part of their civic duty. Such a tactic is a blatant disregard of Petitioner Maddox's right to due process. US Const, Ams V, XIV.

The highly notorious case of an individual being brutally executed and dismembered obviously created a racially volatile atmosphere in the courtroom. The only reason for the prosecution to question the police sergeant in such a manner was to inject fear of crime into the deliberative process. Such a tactic is abhorrent, uncalled for, and reversal should be required.

In addition, the prosecutor improperly vouched for Samantha Herd's credibility during closing argument. A prosecutor must refrain from personally vouching for the credibility of its witnesses. *United States v Young*, 470 US 1, 17-19 (1985). The Court in *Young* explained that two harms arise from such misconduct. First, "such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury." Second, "the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v Young, supra* at 18-19.

Here, one of the key witnesses was Herd. If the jury did not believe her, there would have been little evidence to connect Petitioner to the crime. The prosecution, in expressing concern about how this witness would present to the jury, nevertheless stated

41

his own assessment of this witness' credibility.  Given this witness' key role at trial, the prosecution's closing argument naturally spent a great deal of time discussing her credibility, as demonstrated above.  The manner in which the prosecutor did discuss her credibility, however, falls exactly within the first of the harms cited in *Young*, and implicates the second as well.  This portion of the prosecution's closing argument was misconduct that deprived Defendant of his right to a fair trial, and counsel's failure to object to any aspect of the closing was objectively unreasonable.  See, *Hodge v Hurley*, 426 F3d 368, 386-387 (CA6, 2005).  The prosecution's efforts to tip the scales was prejudicial misconduct, and this writ should issue.

## **RELIEF REQUESTED**

WHEREFORE, Petitioner ANTHONY ALEXANDER MADDOX requests:

A.      That Respondent be required to appear and answer the allegations of this Petition;

B.      That after full consideration of this Petition, this Court relieve Petitioner of the unconstitutional restraint on his liberty;

C.      That this Court grant such other, further, and different relief as the Court may deem just and proper under the circumstances;

D.      That this Court grant oral argument in this matter;

E.      If this Court believes that the record is insufficient to resolve this claim, that this Court hold an evidentiary hearing.


Respectfully submitted,


*S/Phillip D. Comorski*
PHILLIP D. COMORSKI (P46413)
Attorney for Petitioner
1300 Broadway Street, Suite 800
Detroit, Michigan 48226
(313) 963-5101
comorskiphillip@gmail.com

43

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record by electronic mail.

*S/Phillip D. Comorski*
PHILLIP D. COMORSKI (P46413)