UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALEXANDER MADDOX,

     Petitioner,

                              Case No. 20-cv-10347

v.                            Hon. Matthew F. Leitman

CATHERINE BAUMAN,

     Respondent.

_____/

## ORDER GRANTING PETITIONER'S
## REQUEST FOR AN EVIDENTIARY HEARING

Casey Durham was murdered in September 2012. The initial police investigation yielded no suspects. And a year after the murder, the police still had no suspects. Then a man named Antwon Wakefield was arrested for armed robbery. Wakefield is an admitted drug abuser with a substantial criminal record. As Wakefield sat facing that armed robbery charge, he told police that he was present in the living room of a house in Detroit when Petitioner Anthony Maddox killed Durham. Despite claiming to have witnessed the murder a year earlier, Wakefield had never before reported it to police.

A few months later, the police arrested Christopher Stevens for armed robbery. Stevens is also an admitted drug abuser with a substantial criminal history. Just like Wakefield, when Stevens was facing armed robbery charges, he accused

Maddox of killing Durham.  Stevens said that Maddox killed Durham on the main level of a house while he (Stevens) was upstairs (in the same house).  Despite claiming to have been in the house when the murder occurred, Stevens said nothing about the crime to police until his arrest.

Based largely on the post-arrest statements of Wakefield and Stevens, the Wayne County Prosecutor charged Maddox with first-degree murder in violation of Mich. Comp. Laws § 750.316, felon in possession of a firearm in violation of Mich. Comp. Laws § 750.224(f), possession of a firearm in the commission of a felony in violation of Mich. Comp. Laws § 750.224(b), and defacement of a dead body in violation of Mich. Comp. Laws § MCL 750.160.  Wakefield and Stevens were key prosecution witnesses at trial.  So was Samantha Herd.  She was an admitted drug abuser.  She testified that she had been shooting up heroin in the house on the day of Durham's murder (although not at the time it allegedly occurred) and had seen Maddox at the house before and after the murder.  But like Wakefield and Stevens, she said nothing to police about the murder when it happened.

At trial, Maddox's attorney vigorously cross-examined Wakefield, Stevens, and Herd, and counsel exposed important weaknesses in their testimony.  But Maddox says that his attorney should have done more.  According to Maddox, he told his attorney that he had an alibi witness named Crystle White, asked his attorney to contact White, and requested that his attorney call White as a defense witness.

2

Despite that request, Maddox has presented evidence that his attorney did not contact or interview White.  And the attorney did not call White as an alibi witness at trial (or otherwise present an alibi defense).  Without White's alibi testimony, the jury convicted Maddox on all of the charges except the charge of defacement of a dead body.

In these habeas proceedings, Maddox claims, among other things, that his attorney's failure to investigate the alibi defense that White could have supported constituted ineffective assistance of counsel.  And Maddox has requested an evidentiary hearing on that claim. (*See* Habeas Petition, ECF No. 1 PageID.56; Maddox Supp. Br., ECF No. 11, PageID.1311.)  The Court concludes that Maddox is entitled to such a hearing because (1) the state court unreasonably applied clearly established federal law when it rejected Maddox's ineffective assistance of counsel claim; (2) Maddox diligently sought an evidentiary hearing on the claim in state court and the state court did not hold such a hearing; and (3) Maddox asserts factual allegations, which, if true, entitle him to federal habeas relief.

**I**

Whether Maddox is entitled to an evidentiary hearing rests, in large part, upon the procedural history of his ineffective assistance of counsel claim.  The Court therefore begins with the relevant portions of that history.

3

After Maddox's convictions were affirmed on direct appeal, he filed a motion for relief from judgment in the state trial court under Michigan Court Rule 6.500 *et seq.*  In that motion, he argued that his trial counsel was ineffective when counsel failed to contact White and investigate the alibi defense that White could have provided. (*See* St. Ct. Mot., ECF No. 6-13, PageID.1142.)   In support of that argument, Maddox presented a sworn affidavit from White to the state court (the "White Affidavit"). (*See* White Aff., ECF No. 6-13, PageID.1198-1199.)  The White Affidavit provided as follows:

> I, CRYSTLE WHITE, being first duly sworn, say that the following is true to the best of my knowledge and belief:
>
> 1. I am a friend of the above named defendant, Anthony Maddox.
>
> 2. On September 27, 2012, at approximately 2:00 p.m., Mr. Maddox called me up and asked if he could come over to my house to hang out.
>
> 3. I agreed, and Mr. Maddox arrived at my house at approximately 3:00 p.m.
>
> 4. Mr. Maddox ate dinner with myself and my children, who were 1 and 4 at the time.
>
> 5. After dinner, we watched a movie on DVD, and then watched TV until 11:00 p.m., when I went to bed.
>
> 6. When I went to bed, Mr. Maddox was still in the living room watching TV, and when I got up to use the restroom at 2:00 or 3:00, Mr. Maddox was asleep on the living room couch.

4

7. I woke the next day (September 28, 2012) at approximately 6:30 a.m., and proceeded to wake Mr. Maddox, who was still asleep on the couch.

8. We both left the house at approximately 7:00 a.m., and went our separate ways.

9. I was never contacted by anybody representing Mr. Maddox in his criminal case about the fact that I was with him during the entire evening of September 27, 2012.

10. Had I been contacted, I would have agreed to testify on Mr. Maddox's behalf because I know for a fact that he was with me the entire evening of September 27, 2012.

(*Id*.)  Maddox also provided the state court with evidence that he had informed his trial counsel that White was available as an alibi witness and that he had asked his counsel to contact White. (*See* Maddox Aff., ECF No. 6-13, PageID.1217.)

On April 23, 2018, the state trial court denied Maddox's motion in a written Opinion and Order. (*See* St. Ct. Op. and Order, ECF No. 6-9.)  In the section of the Opinion and Order denying relief on Maddox's ineffective assistance claim, the trial court explained its ruling as follows:

> Generally, to establish ineffective assistance of counsel, a defendant must show: (1) that counsel's performance was below an objective standard of reasonableness under prevailing processional norms; (2) that there is a reasonable probability that, but for the counsel's error, the result of the proceedings would have been different, *Strickland v. Washington,* 466 US 668, 688, 694, 104 S Ct 2052, 80 Led2d 674 (1984); *People v. Frazier*, 478 Mich. 231, 243, 733 N.W.2d 557 (2007), and (3) that the

resulting proceedings were fundamentally unfair or unreliable, *People v. Odom,* 276 Mich App 407, 415, 70 N.w. 2d 557 (2007). Counsel's performance must be measured against an objective standard of reasonableness and without the benefit of hindsight. *People v. LaVearn*, 448 Mich 207, 216, 528 NW2d 721 (1995).

Based on the existing record, defendant is unable to demonstrate ineffective assistance of counsel. First, defendant is unable to demonstrate that the trial counsel's performance was deficient. Defendant's main argument is that he had an alibi witness, Crystal White, who defendant now claims was not contacted by his defense counsel prior or during his 2014 trial. Ms. White via her affidavit claims that defendant arrived at her house at 3 pm, subsequently ate dinner with Ms. White and her two children (ages 1, and 4) then proceeded to watch a movie on DVD until 11 p.m Ms. White then went to bed, and awoke around 2 or 3 am to use the bathroom, and saw defendant sleeping on the living room couch. Both Ms. White and defendant left the house later the next morning at 7am. Ms. White claims no one contacted her and she would have testified to the aforementioned. Defendant claims his counsel was ineffective for failing alibi witness, and counsel is required to investigate all apparently substantial defenses available in a timely manner. *Beasley v. United States*, 491 F2d 687 (1974).

Identity is an essential element in a criminal prosecution, P*eople v. Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1979), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v. Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v. Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000); *Nowack*, 462 Mich 392; 614 NW2d 78 (2000). The credibility of identification

6

testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

During defendant's trial, two eyewitnesses, who were familiar with defendant, unequivocally identified defendant as the gunman. Wakefield testified that he and Durham were sitting on a couch, engaged in conversation, when he saw defendant shoot Durham. Stevens testified that he heard three gunshots, looked into the living room, and saw Durham lying dead on the couch, and defendant pointing a pistol toward Durham's body. These witnesses' testimony, if believed, was sufficient to establish defendant's identify as the shooter. *Davis, supra.* Defendant's challenges to the weight and credibility of the witnesses' identification were matters for the jury to decide and do not affect the sufficiency of the evidence. *People v. Scotts*, 80 Mich App 1, 9; 263 NW2d 272 (1977). The same challenges to the identification testimony that defendant raises on appeal were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v. Wolfe*, 440 Mich. 508, 514; 489 NW2d 784 (1992), amended 441 Mich. 1201 (1992). Rather this Court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Nowack, supra.* As there were two eyewitnesses who identified defendant as the shooter, Ms. White's claim defendant was with her watching a movie is simply not credible, as there was sufficient evidence defendant pointed a gun and shot and killed the complainant, Durham. *People v. Maddox,* No. 324084, 2016 WL 716294, (2016), app den 500 Mich 866; 885 NW2d 276 (2016).

Defendant has previously raised the issue challenging his identity in his appeal of right, which was denied by Michigan's Court of Appeals, which affirmed defendant's conviction and sentence. Therefore, defendant is precluded from re-arguing this issue in his post-conviction

motion. *People v. Keeth*, Docket No. 317971, 2014 WL
6089165 (2014). MCR 6.508 (D)(2).

(*Id*., PageID.919-922.)

Maddox thereafter filed a Delayed Application for Leave to Appeal in the
Michigan Court of Appeals.  Maddox raised his ineffective assistance of counsel
claim in the Application. (*See* Mich. Ct. of App. Application for Leave to Appeal,
ECF No. 6-13, PageID.1140.)   In a one-sentence order, the Michigan Court of
Appeals denied the application on the ground that Maddox "failed to establish that
the trial court erred in denying the motion for relief from judgment." (Mich. Ct. of
App. Order, ECF No. 6-13, PageID.1127.)

Maddox then filed an Application for Leave to Appeal in the Michigan
Supreme Court.  Maddox raised his ineffective assistance of counsel claim in the
Application. (*See* Mich. Sup. Ct. Application for Leave to Appeal, ECF No. 6-14,
PageID.1236.)   In a one-sentence order, the Supreme Court denied the application
on the ground that Maddox "failed to meet the burden of establishing entitlement to
relief under [Michigan Court Rule] 6.508(D)." (Mich. Sup. Ct. Order, ECF No. 6-
14, PageID.1221.)

Maddox then timely filed a petition for writ of habeas corpus in this Court.
(*See* Pet., ECF No. 1.)  In the Petition, Maddox asserts a number of claims, including
the ineffective assistance of counsel claim based upon his trial counsel's failure to
investigate and present White as an alibi witness. (*See id*., PageID.22.)  Respondent

filed an Answer to the Petition in which she contended that Maddox is not entitled to relief. (*See* Answer, ECF No. 5.)

After this Court reviewed the Petition and Answer, it directed the parties to file supplemental briefs on the following two issues:

> (1) Did the trial court unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), to the ineffective-assistance claim by effectively treating it as a claim challenging the sufficiency of the evidence?

> (2) If the trial court did unreasonably apply *Strickland*, and if the Petitioner diligently sought, but did not receive, an evidentiary hearing in the state courts, may this Court hold an evidentiary hearing on the ineffective-assistance claim?

The parties thereafter filed the supplemental briefs.  Relevant here, Maddox argued that the Court should hold an evidentiary hearing because the state trial court unreasonably applied *Strickland* and because he diligently sought, but did not receive, an evidentiary hearing in state court. (*See* Maddox Supp. Br., ECF No. 11, PageID.1311.)  Respondent agreed with Maddox that the trial court unreasonably applied *Strickland*, but Respondent nonetheless argued, for the reasons explained in more detail below, that Maddox is not entitled to an evidentiary hearing. (*See* Resp.'s Supp. Br., ECF No. 12, PageID.1323.)  After reviewing the supplemental briefs, the Court held a hearing to address the question of whether Maddox is entitled to an evidentiary hearing.  The Court is now prepared to rule on that question.

**II**

The first question that this Court must answer in determining whether Maddox is entitled to an evidentiary hearing is: does the "relitigation bar," *Edwards v. Vannoy*, __ U.S. __, 141 S. Ct. 1547, 1571 (2021), within the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") preclude the Court from granting relief on Maddox's ineffective assistance of counsel claim? The Court must begin with that question because if the relitigation bar applies to Maddox's claim, and if he cannot clear that bar based upon the state court record alone, then the Court cannot grant him an evidentiary hearing. For the reasons explained below, the Court concludes that the relitigation bar does apply but that Maddox has successfully cleared the bar based upon the state court record.

**A**

AEDPA's relitigation bar appears in 28 U.S.C. § 2254(d). That statute provides, in relevant part, that where a state court has adjudicated a habeas petitioner's claim on the merits, a federal court may not grant habeas relief on the claim unless the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *See* 28 U.S.C. § 2254(d). The relitigation

bar applies to Maddox's ineffective assistance of counsel claim because, as both parties agree, the state courts adjudicated the claim on the merits.

## B

In order to overcome the relitigation bar, a habeas petitioner must demonstrate that the state court's adjudication of a claim was unreasonable based upon the state court record alone. *See Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Maddox has done so with respect to his ineffective assistance of counsel claim.

## 1

In determining whether a habeas petitioner has overcome the relitigation bar, a district court must first "train its attention on the particular reasons – both legal and factual – why state courts rejected a state prisoner's federal claims." *Wilson v. Sellers*, 138 S. Ct. 1188, 1191-92 (2018). "This is a straightforward inquiry when the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion." *Id*. Under those circumstances, a district court "simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Id*. But the question "is more difficult" where a state appellate decision that resolves a claim against a habeas petitioner on the merits does "not come accompanied with those reasons." *Id*. In that case, a district court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained

decision adopted the same reasoning." *Id.* However, a habeas respondent "may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed." *Id.*

Here, both parties agree that the state trial court was the last state court to issue a reasoned decision on Maddox's ineffective assistance of counsel claim. While the Michigan Supreme Court also decided the claim on the merits, it did so in an unexplained order. (*See* Mich. Sup. Ct. Order, ECF No. 6-14, PageID.1221.) Thus, the Court presumes that the Michigan Supreme Court "adopted the same reasoning" as the state trial court. *Wilson*, 138 S. Ct. at 1192.

## 2

The look-through presumption here compels the conclusion that the Michigan Supreme Court unreasonably rejected Maddox's ineffective assistance of counsel claim. That is because, as Respondent concedes, the state trial court – whose reasoning the Michigan Supreme Court presumptively adopted – unreasonably applied *Strickland* when it rejected Maddox's ineffective assistance claim. (*See* Resp.'s Supp. Br., ECF No. 12, PageID.1322-23.) As Respondent aptly notes, the state trial court "outlin[ed] the correct [*Strickland*] standard" but "never actually *applied* the standard to the facts of the case." (*Id.*; emphasis in original.) Rather, the

12

trial court "linked back to analysis that the Michigan Court of Appeals employed on direct review of [Maddox's] sufficiency [of the evidence] claim." (*Id*.)  Indeed, the state trial court seemed to resolve Maddox's ineffective assistance claim against him on the basis that the evidence of his identity presented at trial was sufficient to tie him to Durham's murder. (*See* St. Ct. Op. and Order, ECF No. 6-9, PageID.919-922.) The state trial court's conflation of Maddox's ineffective assistance claim with the entirely separate question of whether the prosecution presented sufficient evidence to support his convictions resulted in a decision that involved an unreasonable application of *Strickland*.  And the Michigan Supreme Court adopted that unreasonable application.

Because Maddox has shown, based upon the state court record alone, that the Michigan Supreme Court unreasonably applied *Strickland*, AEDPA's relitigation bar does not preclude relief on Maddox's ineffective assistance claim.

**3**

Respondent counters that the Court should not presume that the Michigan Supreme Court adopted the trial court's reasoning with respect to Maddox's ineffective assistance of counsel claim.  Respondent stresses that, as explained above, the "look through" presumption may be rebutted, and she insists that she has presented sufficient evidence to demonstrate that the Michigan Supreme Court did not, in fact, adopt the trial court's reasoning. (Resp.'s Supp. Br., ECF No. 12,

PageID.1324-1325.)   She contends that the Michigan Supreme Court rested its decision on a different ground – one that is reasonable and which thus precludes relief under AEDPA.   The Court disagrees.

**a**

Respondent first insists that the Michigan Supreme Court could not possibly have adopted the trial court's reasoning because that reasoning was patently flawed. Respondent directs the Court to the United States Supreme Court's statement in *Wilson* that "the unreasonableness of the lower court's decision itself provides some evidence that makes it less likely the state supreme court adopted the same reasoning." (*Id*., quoting *Wilson*, 138 S.Ct. at 1196.)  And Respondent contends that it is "exceedingly unlikely" that the Michigan Supreme Court adopted the trial court's reasoning because that reasoning "was not only legally unreasonable but also logically incoherent." (*Id*., PageID.1325.)   There are several problems with this argument.

First, it is difficult, if not impossible, to reconcile this line of argument with the position that Respondent previously took in these proceedings.  In sharp contrast to Respondent's current contention that the trial court's reasoning was so obviously wrong that no reasonable jurist could have adopted it, Respondent previously attempted to defend that same trial court decision.   More specifically, in Respondent's Answer to the Petition, she argued that "the state trial court's holding

that Maddox was not denied the effective assistance of counsel for failure to present the testimony of Crystle White was neither contrary to nor an unreasonable application of clearly established federal law." (Answer, ECF No. 5, PageID.82.) Indeed, Respondent did not recognize the state court's error until after this Court highlighted the error during an on-the-record status conference (held on March 23, 2023). Simply put, the trial court's reasoning did not initially strike Respondent as obviously wrong, and thus it is far from clear that the Michigan Supreme Court must have recognized the trial court's error *sua sponte* and rejected its reasoning.

Second, Respondent has not cited any case in which any court has found the look-through presumption rebutted under circumstances like those presented here. In fact, Respondent has not cited any case in which any court has found the look-through presumption rebutted at all. Respondent has simply not cited any authority – other than the general principles set forth in *Wilson* – that could support a finding that the look-through presumption has been rebutted here. The absence of any factually-similar supporting authority cuts sharply against Respondent's contention that the presumption has been rebutted.

Finally, the Michigan Supreme Court was not presented with an alternative ground on which to reject Maddox's ineffective assistance of counsel claim. The state prosecutor did not file an opposition to Maddox's Applications for Leave to Appeal in either the Michigan Court of Appeals or the Michigan Supreme Court.

That the Michigan Supreme Court was not presented with a different basis for denying Maddox's ineffective assistance claim makes it less likely that it rejected the claim on some basis other than the one given by the trial court.

**b**

Respondent next contends that even though the Michigan Supreme Court was not presented with an alternative ground for rejecting Maddox's ineffective assistance claim, one alternative ground that was so "obvious" that the Michigan Supreme Court must have adopted it. (Resp.'s Supp. Br., ECF No. 12, PageID.1325-1326.)  In Respondent's words, the White Affidavit "was so patently incredible that it would have been reasonable for counsel to forego calling her as a witness and, even if she did testify, her implausible testimony would not have made a difference in the outcome.  Put differently, it was apparent on the face of the affidavit that counsel did not perform deficiently by failing to present the alibi defense and Maddox was not prejudiced in any event." (*Id*.)  The Court disagrees.

While the White Affidavit raises a number of legitimate questions, the Court cannot conclude that White's story was so "patently incredible" that the Michigan Supreme Court must have rejected it.  The most obvious question for White is: how could she remember 61 months after Durham's murder (when she signed the White Affidavit) what she and Maddox were doing on the day of the murder (and at what times of day they were doing it)?  White may well have no satisfactory answer to the

16

question.  Indeed, White's claimed ability recall precise details of a day 61 months earlier seems unusual, if not somewhat suspect.

But there may be an explanation for White's claimed memory.  For instance, it is possible that she kept the same schedule and routine every day and that Maddox simply joined in that routine.  Or perhaps there was something especially significant about that day that enabled her to recall it in detail.  Without knowing whether these circumstances existed, the Court does not have enough information to determine whether the White Affidavit is "patently incredible."  The Michigan Supreme Court likewise lacked enough information to definitively determine whether White's story made sense.  Thus, the Court cannot conclude, as Respondent insists, that the Michigan Supreme Court must have denied relief on Maddox's ineffective assistance claim on the ground that White's version of events was patently unbelievable.

<b>c</b>

For all of these reasons, the Court adheres to the look-through presumption and concludes that the Michigan Supreme Court adopted the trial court's unreasonable application of *Strickland*.  The Court therefore holds that Maddox has overcome the relitigation bar based upon the state court record alone.

### III

Just because Maddox has overcome the relitigation bar does not mean that he is automatically entitled to an evidentiary hearing. Instead, it means that Maddox is entitled to *de novo* review of his ineffective assistance of counsel claim. *See Panetti v. Quarterman*, 551 U.S. 930, 953 (2007). *See also Rice v. White*, 660 F.3d 242, 252 (6th Cir. 2011) (A court should "review *de novo* a claim adjudicated on the merits in state court if the petitioner shows, by virtue of one of its exceptions, that the relitigation bar of § 2254(d) does not apply"). The next questions are: (1) does the Court have the authority to hold an evidentiary hearing when conducting its *de novo* review of Maddox's claim? and (2) if the Court has that authority, should the Court hold a hearing here? The answer both questions is: yes.

### A

Another provision of AEDPA, 28 U.S.C. § 2254(e)(2), speaks to whether, on *de novo* review, the Court may hold an evidentiary hearing. That provision generally prohibits a district court from holding such a hearing where the petitioner has "failed to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2). A petitioner is guilty of such a failure only where "there is lack of diligence, or some greater fault, attributable to the [petitioner] or the [petitioner's] counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000) (quoting 28 U.S.C. § 2254(e)(2)).

Here, Respondent conceded during the hearing on August 1, 2023, that Maddox did not fail to exercise diligence with respect to developing the factual predicate for his ineffective assistance of counsel claim.  Maddox presented to the state courts (1) the White Affidavit and (2) his own sworn statement that before trial he informed his trial counsel about White's potential appearance as a witness, and Maddox made multiple requests for evidentiary hearings on his ineffective-assistance claim in the state courts. (*See* St. Ct. Mot., ECF No. 6-8, PageID.882, 915-916; Mich. Ct. of App. Application for Leave to Appeal, ECF No. 6-13, PageID.1170; Mich. St. Court Application for Leave to Appeal, ECF 6-14, PageID.1266, 1295)). In light of those efforts (and as Respondent acknowledged), Section 2254(e)(2) poses no barrier to Maddox's request for an evidentiary hearing.

## B

Where, as here, "AEDPA poses no bar to an evidentiary hearing, then the petitioner is entitled to a hearing in federal court 'if (1) he has alleged facts which, if proved, would entitle him to habeas relief, and (2) the state courts, for reasons beyond [petitioner's] control, never considered his claim in a full and fair hearing.'" *Westray v. Brookhart*, 36 F.4th 737, 754 (7th Cir. 2022) (quoting *Ward v. Jenkins*, 613 F.3d 692, 698 (7th Cir. 2010)).  Maddox has met both elements of that test. He is therefore entitled to an evidentiary hearing.

**1**

First, Maddox has alleged facts which, if proven, would entitle him to habeas relief.  As described above, Maddox alleges in his habeas petition that White was in a position to offer important alibi testimony, that he informed his attorney about White, and that his attorney failed to investigate White's possible alibi testimony and neglected to call her as a defense witness.  The Sixth Circuit has repeatedly found ineffective assistance of counsel under similar circumstances. *See e.g., Foster v. Wolfenbarger*, 687 F.3d 702, 710 (6th Cir. 2012) (deeming a 15 minute phone call to a potential alibi witness an insufficient investigation that constituted ineffective assistance of counsel); *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004) (finding failure to investigate potential alibi witnesses to constitute ineffective assistance of counsel); *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2006) (same); *Avery v. Prelesnik*, 548 F.3d 434, 434 (6th Cir. 2008) (same); *Stewart v. Wolfenbarger*, 468 F.3d 338, 356 (6th Cir. 2006) (same); *Caldwell v. Lewis*, 414 F. App'x 809, 818 (6th Cir. 2011) (same); *Bigelow v. Haviland*, 576 F.3d 284, 287 (6th Cir. 2009) (same).  Maddox may be able to elicit testimony at an evidentiary hearing that brings his case within this line of Sixth Circuit cases and establishes his right to relief.

Respondent counters that any decision by Maddox's trial counsel not to interview White and/or pursue her possible testimony was necessarily reasonable

because, even without communicating with White, counsel could have appropriately concluded that her testimony could not have assisted the defense and may even have hurt the defense. But without hearing White's story for himself and asking her questions to determine whether she had an explanation for her ability to recall events, it would have been difficult for counsel to make a fully-informed strategic decision as to whether it made sense to call her as a defense witness. *See Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) ("A purportedly strategic decision is not objectively reasonable when the attorney has failed to investigate his options and make a reasonable choice between them.") Simply put, despite the questions raised by White's account, Maddox's attorney may well have been obligated to investigate her account and it may have been ineffective assistance for him not to do so.[1] The Court declines to hold as a matter of law, on the basis of the current record, that counsel was not ineffective in his handling of possible testimony from White.

---

[1] If Maddox's attorney had made a strategic decision not to call any defense witnesses and not to present a defense case based upon his determination that the prosecution had failed to meet its burden of proof, then it could, perhaps, have been reasonable for counsel not to pursue possible testimony from White. But counsel did call a defense witness, and he did so even though the witness – a man named Antonio Wakefield – had serious problems with his story that the prosecution was able to expose on cross-examination. Given that defense counsel chose to present a defense case that was vulnerable to attack, it is not obvious from the record that he made a reasonable strategic choice not to pursue testimony from White on the basis that she could be subject to attack if called as a defense witness.

**2**

Second, the state courts – for reasons beyond Maddox's control – rejected Maddox's claim of ineffective assistance of counsel without holding a full and fair hearing.  Indeed, even though Maddox made an offer of proof in support of the claim – through his submission of the White Affidavit and his own sworn statement – and requested an evidentiary hearing at every level of review, the state courts denied relief without allowing him to develop a factual record in support of his claim.  *See Ward*, 613 F.3d at 701 (finding that the state courts rejected an ineffective assistance of counsel claim without holding a full and fair hearing where the state courts declined to hold evidentiary hearing even though the petitioner had requested one "at every step" of the state court proceedings).  An evidentiary hearing is warranted and appropriate here.

**IV**

Respondent resists this conclusion.  She insists that the Supreme Court's decision in *Cullen, supra*, precludes the Court from holding an evidentiary hearing. The Court disagrees.

As noted above, the Supreme Court held in *Cullen* that "[i]f a claim has been adjudicated on the merits by a state court, a federal habeas petitioner must overcome [AEDPA's relitigation bar] on the record that was before that state court." *Cullen*, 563 U.S. at 185.  In the words of the Sixth Circuit, *Cullen* established that "'evidence

22

introduced in federal court has no bearing on § 2254(d)(1) review' – that is, on whether a state court's adjudication of a claim was contrary to or involved an unreasonable application of clearly established federal law." *Harris v. Haeberlin*, 752 F.3d 1054, 1057 (6th Cir. 2014) (quoting *Cullen,* 563 U.S. at 1400).  Thus, *Cullen* "precludes consideration of evidence introduced in federal court *only* when determining whether a state court's adjudication of a claim involved an unreasonable federal-law error." *Id*. (emphasis added.) *See also Smith v. Cain,* 708 F.3d 628, 635 (5th Cir. 2013) (finding *Cullen* inapplicable where the district court found, on the basis of the state court record, that the trial court had unreasonably applied clearly established federal law); *Upshaw v. Stephenson*, 2022 WL 1308816, at *11 (E.D. Mich. May 2, 2022) ("Once a petitioner satisfies the 28 U.S.C. § 2254(d) inquiry, [*Cullen's*] limitations on taking new evidence cease to apply").

   *Cullen* does not preclude the Court from holding an evidentiary hearing here because, for all of the reasons explained above, Maddox has already satisfied AEDPA's relitigation bar based upon the state court record.  Stated another way, *Cullen* poses no bar to an evidentiary hearing because Maddox is not seeking such a hearing for the one and only purpose prohibited by *Cullen*: to develop evidence necessary to satisfy AEDPA's relitigation bar. *See Harris*, 752 F.3d at 1057 (holding that *Cullen* did not bar a habeas petitioner's request for evidentiary hearing where the Sixth Circuit had determined on the basis of the state-court record that the state

court had unreasonably applied clearly-established federal law). Respondent's reliance on *Cullen* is therefore misplaced.

**V**

For all of the reasons explained above, the Court grants Maddox an evidentiary hearing on his claim that his trial counsel failed to provide effective assistance when counsel failed to investigate Crystle White's potential testimony and call her as an alibi witness. The Court will convene a status conference with counsel to plan for that hearing.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:  October 23, 2023

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on October 23, 2023, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126
