UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTHONY ALEXANDER MADDOX,

   Petitioner,       Case No. 20-cv-10347
               Hon. Matthew F. Leitman

v.

JEFF TANNER,[1]

   Respondent.
_____/

## ORDER (1) DENYING PETITION FOR A WRIT OF HABEAS CORPUS (ECF No. 1) AND (2) DENYING A CERTIFICATE OF APPEALABILITY

Petitioner Anthony Alexander Maddox is a state inmate in the custody of the

Michigan Department of Corrections.   In 2014, a jury in the Wayne County Circuit

Court found Maddox guilty of first-degree murder, MICH. COMP. LAWS § 750.316,

felon in possession of a firearm, MICH. COMP. LAWS § 750.224f, and possession of

a firearm during the commission of a felony, MICH. COMP. LAWS § 769.227b.   The

state trial court then sentenced Maddox to life imprisonment without the possibility

_____

[1] Maddox is currently confined at the Macomb Correctional Facility in Lenox
Township, Michigan.   *See* Michigan Department of Corrections Offender Tracking
Information System ("OTIS"), http://www.mdocweb.state.mi.us/OTIS2/otis2profile
.aspx?mdocNumber'331272.   The proper respondent in a habeas case is the warden
at that facility who has custody of a petitioner. *See* 28 U.S.C. § 2243; 28 U.S.C. foll.
§ 2254, Rule 2(a); Fed. R. Civ. P. 81(a)(4).   Accordingly, the Court **AMENDS** the
case caption in this matter to name Warden Jeff Tanner as the Respondent.

1

of parole, a concurrent term of two to five years imprisonment, and a consecutive term of two years imprisonment.

On February 10, 2020, Maddox, through counsel, filed a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. (*See* Pet., ECF No. 1.) In the petition, Maddox raises claims related to the effectiveness of his trial counsel, the jury instructions, the joinder of charges, his right to a public trial, the non-disclosure of evidence, the sufficiency of the evidence, and the conduct of the prosecutor. (*See id.*)

The Court has carefully reviewed the petition, and for the reasons explained below, it concludes that none of Maddox's claims entitle him to federal habeas relief. The Court will therefore **DENY** the petition and **DENY** Maddox a certificate of appealability.

## I

Maddox's convictions arose out of the murder of a man named Casey Durham in September 2012. For more than a year, the police had no suspects in the murder. Then, two witnesses came forward and identified Maddox as the killer. The Michigan Court of Appeals described the relevant factual background as follows:

> A jury convicted defendant of fatally shooting Casey Durham on September 27, 2012, in Highland Park. The shooting occurred at Antwon Wakefield's house. The prosecution presented evidence that defendant and Durham were in the living room of Wakefield's house,

2

having a conversation about money that defendant owed
to Durham. After the discussion ended, Wakefield and
Durham engaged in further conversation when defendant
emerged from an enjoining room and shot Durham.
Christopher Stevens, who was upstairs, came downstairs
after hearing three gunshots, and saw defendant holding a
pistol pointed toward Durham's dead body. No one
reported the incident to the police at that time. Two days
later, Durham's severed head and an arm were found
inside a house in Detroit, and his remaining body parts
were subsequently found behind a different house. In
December 2013, the police became aware of defendant as
a suspect, and Wakefield, Stevens, and Wakefield's
girlfriend, Samantha Herd, ultimately gave police
statements about the shooting. The defense denied that
defendant was the perpetrator, and argued that the
prosecution witnesses had motives to lie, and that the
police investigation was not reliable.

*People v. Maddox*, 2016 WL 716294, at *1 (Mich. Ct. App. Feb. 23, 2016).

Following his convictions and sentencing, Maddox filed an appeal of right in
the Michigan Court of Appeals raising claims concerning a stipulation to his prior
felony conviction, the conduct of the prosecutor, and the sufficiency of the evidence.
The court denied relief on those claims and affirmed his convictions. *See id.* at ** 2-
5. Maddox then filed an application for leave to appeal in the Michigan Supreme
Court. That court denied the application "because [it was] not persuaded that the
questions presented should be reviewed." *People v. Maddox*, 885 N.W.2d 276
(Mich. 2016).

Maddox subsequently filed a motion for relief from judgment in the state trial court in which he raised claims related to the effectiveness of his trial counsel, the jury instructions, the joinder of charges, his right to a public trial, and newly-discovered evidence affecting the credibility of the primary police officer who testified at trial. (*See* St. Ct. Mot., ECF No. 8.)   The trial court denied relief on those claims. (*See* St. Ct. Order, ECF No. 9.)   Maddox then filed a delayed application for leave to appeal with the Michigan Court of Appeals. (*See* Mich. Ct. of App. Application for Leave to Appeal, ECF No. 6-13, PageID.1140.)   That court denied leave for failure "to establish that the trial court erred in denying the motion for relief from judgment." (Mich. Ct. of App. Order, ECF No. 6-13, PageID.1127.)   Maddox thereafter filed an application for leave to appeal with the Michigan Supreme Court, and that court denied leave for failure "to meet the burden of establishing entitlement to relief under [Michigan Court Rule] 6.508(D)." *People v. Maddox*, 933 N.W.2d 305 (Mich. 2019).   Maddox also filed a motion for reconsideration, and the Michigan Supreme Court denied that motion. *See People v. Maddox*, 937 N.W.2d 652 (Mich. 2020).

On February 10, 2020, Maddox filed his federal habeas petition in this Court. In the petition, Maddox raises the following claims:

I.     Trial counsel's representation at trial fell below an objective standard of reasonableness when he failed to file

4

a notice of alibi defense or conduct a reasonable investigation into petitioner's potential alibi defense.

II. Trial counsel's representation at trial fell below an objective standard of reasonableness when he failed to call a proper foundational witness to introduce defense evidence.

III. Petitioner was denied a fair trial when the court, in its final instructions to the jury, rejected the request for the addict–informer instruction, thereby denying him the right to a properly instructed jury.

IV. The joinder of the murder count and the mutilation count into one prosecution deprived petitioner of a fair trial, as the alleged acts occurred on different nights, in different cities, and there was no showing that the acts were a series of connected acts.

V. The court's exclusion of members of the public from the courtroom during the first day of trial violated petitioner's Sixth Amendment right to a public trial.

VI. Petitioner was deprived of his right to due process because the prosecution violated *Brady/Giglio* by withholding information bearing on the credibility of the officer-in-charge, who was later charged with and convicted of tampering with evidence.

VII. Petitioner was denied due process of law when he was convicted based on insufficient evidence.

VIII. Petitioner was denied a fair trial because the prosecutor engaged in blatant prosecutorial misconduct.

Respondent filed an answer to the petition in which he argued that the Court should deny the petition because certain claims are barred by procedural default and all of the claims lack merit. (*See* Answer, ECF No. 5.)

After this Court reviewed the petition and answer, it directed the parties to file supplemental briefs on the following two issues:

> (1) Did the trial court unreasonably apply *Strickland v. Washington*, 466 U.S. 668 (1984), to the ineffective-assistance claim by effectively treating it as a claim challenging the sufficiency of the evidence?

> (2) If the trial court did unreasonably apply *Strickland*, and if the Petitioner diligently sought, but did not receive, an evidentiary hearing in the state courts, may this Court hold an evidentiary hearing on the ineffective-assistance claim?

The parties thereafter filed the supplemental briefs.  Maddox argued in his brief that the Court should hold an evidentiary hearing because the state trial court unreasonably applied *Strickland* and because he diligently sought, but did not receive, an evidentiary hearing in state court. (*See* Maddox Supp. Br., ECF No. 11, PageID.1311.)  Respondent agreed with Maddox that the trial court unreasonably applied *Strickland*, but Respondent nonetheless argued that Maddox was not entitled to an evidentiary hearing. (*See* Resp.'s Supp. Br., ECF No. 12, PageID.1323.)

The Court ultimately agreed with Maddox and held an evidentiary hearing related to Maddox's argument that his trial counsel failed to investigate and call a

potential alibi witness, Crystle White, to testify at trial.  The Court will discuss Maddox's claim related to the purported alibi in much more detail below.

Having considered the testimony at the evidentiary hearing, and having reviewed the parties' supplemental submissions, the Court is now prepared to rule on Maddox's petition.

## II

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires federal courts to uphold state court adjudications on the merits unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d). "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

## III

## A

Maddox first claims that he is entitled to habeas relief because his trial counsel was ineffective in two respects: (1) for failing to investigate and present an alibi defense with testimony from his friend, Crystle White and (2) for failing to

call a proper foundational witness to produce the victim's cell phone records at trial. The Court will examine each instance of alleged ineffective assistance separately. For the reasons explained below, neither entitle Maddox to habeas relief.

## 1

White first raised both of these ineffective assistance claims in a motion for relief from judgment that he filed in the state trial court. (*See* St. Ct. Mot., ECF No. 6-8.)   On April 23, 2018, that court denied Maddox's motion in a written Opinion and Order. (*See* St. Ct. Op. and Order, ECF No. 6-9.)   The parties agree that when the state trial court rejected these claims, it unreasonably applied the clearly-established federal law governing ineffective assistance claims described in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). (*See* Resp.'s Supp. Br., ECF No. 12, PageID.1322-1323, acknowledging that the state court's "application of the *Strickland* standard was faulty").   Indeed, as Respondent concedes, the state trial court "outlin[ed] the correct [*Strickland*] standard" but "never actually *applied* the standard to the facts of the case." (*Id.*; emphasis in original.)   Thus, because the state trial court unreasonably applied clearly-established federal law, the Court reviews both of these ineffective assistance claims *de novo*.

## 2

A violation of the Sixth Amendment right to the effective assistance of counsel is established where an attorney's performance was deficient and the

deficient performance prejudiced the defense. *See Strickland*, 466 U.S. at 687. To meet the first *Strickland* prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness." *Id.* at 688. In doing so, the petitioner must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that ... the challenged action 'might be considered sound trial strategy.'" *Id.* at 688-89.

   The "prejudice" component of a *Strickland* claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Here, the parties have agreed that the prejudice component of *Strickland* is satisfied "if there is a reasonable probability that at least one juror would have struck a different balance." (Joint Notice of Auth., ECF No. 23 (citing *Wiggins*, *v. Smith*, 539 U.S. 510, 523 (2003); *Peoples v Lafler*, 734 F.3d 503, 514 (6th Cir. 2013); *Lundgren v Mitchell*, 440 F.3d 754, 770 (6th Cir. 2006)).

**3**

**a**

   The Court begins with Maddox's claim that his trial counsel was ineffective for failing to investigate and call his friend, Crystle White, to testify as an alibi witness at trial. As noted above, Maddox first raised this claim in the motion for

relief from judgment that he filed in the state trial court.   In support of that motion, Maddox presented the state court with a sworn affidavit from White (the "White Affidavit"). (*See* White Aff., ECF No. 6-13, PageID.1198-1199.)   The White Affidavit was signed and notarized on November 14, 2017, nearly 5 years after Durham's murder.   In its entirety, the White Affidavit provided as follows:

> I, CRYSTLE WHITE, being first duly sworn, say that the following is true to the best of my knowledge and belief:
>
> 1. I am a friend of the above named defendant, Anthony Maddox.
>
> 2. On September 27, 2012, at approximately 2:00 p.m., Mr. Maddox called me up and asked if he could come over to my house to hang out.
>
> 3. I agreed, and Mr. Maddox arrived at my house at approximately 3:00 p.m.
>
> 4. Mr. Maddox ate dinner with myself and my children, who were 1 and 4 at the time.
>
> 5. After dinner, we watched a movie on DVD, and then watched TV until 11:00 p.m., when I went to bed.
>
> 6. When I went to bed, Mr. Maddox was still in the living room watching TV, and when I got up to use the restroom at 2:00 or 3:00, Mr. Maddox was asleep on the living room couch.
>
> 7. I woke the next day (September 28, 2012) at approximately 6:30 a.m., and proceeded to wake Mr. Maddox, who was still asleep on the couch.

8. We both left the house at approximately 7:00 a.m., and went our separate ways.

9. I was never contacted by anybody representing Mr. Maddox in his criminal case about the fact that I was with him during the entire evening of September 27, 2012.

10. Had I been contacted, I would have agreed to testify on Mr. Maddox's behalf because I know for a fact that he was with me the entire evening of September 27, 2012.

(*Id*.)   Maddox also provided the state court with evidence that he had informed his trial counsel that White was available as an alibi witness and that he had asked his counsel to contact White. (*See* Maddox Aff., ECF No. 6-13, PageID.1217.)

**b**

Maddox argued in these proceedings that the White Affidavit warranted an evidentiary hearing in this Court. (*See* Maddox Supp. Br., ECF No. 11, PageID.1311.)   Respondent countered that Maddox was not entitled to an evidentiary hearing because the White Affidavit "was so patently incredible that it would have been reasonable for counsel to forego calling her as a witness and, even if she did testify, her implausible testimony would not have made a difference in the outcome.   Put differently, it was apparent on the face of the affidavit that counsel did not perform deficiently by failing to present the alibi defense and Maddox was not prejudiced in any event." (Resp.'s Supp. Br., ECF No. 12, PageID.1325-1326.)

11

The Court recognized that while there were some legitimate questions about the White Affidavit, it could not "conclude that White's story [was] so 'patently incredible' that the Michigan Supreme Court must have rejected it." (Order, ECF No. 14, PageID.1353.)   The Court explained:

> The most obvious question for White is: how could she remember 61 months after Durham's murder (when she signed the White Affidavit) what she and Maddox were doing on the day of the murder (and at what times of day they were doing it)?   White may well have no satisfactory answer to the question.   Indeed, White's claimed ability recall precise details of a day 61 months earlier seems unusual, if not somewhat suspect.

> But there may be an explanation for White's claimed memory.   For instance, it is possible that she kept the same schedule and routine every day and that Maddox simply joined in that routine.   Or perhaps there was something especially significant about that day that enabled her to recall it in detail.   Without knowing whether these circumstances existed, the Court does not have enough information to determine whether the White Affidavit is "patently incredible."

(*Id.*, PageID.1353-1354.)

### c

The Court held the evidentiary hearing on February 27, 2024.   At that hearing, White testified consistent with what she said in the White Affidavit.   She told the Court that she remembered the night of the murder (September 27, 2012), that she was with Maddox and her two children that night, and that Maddox had

fallen asleep on her couch watching a movie she had rented from Netflix.

The Court finds White's testimony wholly incredible and not believable. She offered no plausible explanation for how she could have remembered precise details from a night in September 2012 either (1) in November 2017 when she signed the White Affidavit, or (2) in 2024 during the evidentiary hearing. And the explanations that she did attempt to provide were factually impossible and/or not supported by any corroborating evidence. For example, White primarily testified that she was able to remember the details of that particular night because she was with her two daughters, who she said were 1 and 4 years old, and she was then in the process of potty training one of them. But White later acknowledged under further questioning that her children had not even been born yet on the night of the murder.[2] That concession fatally undermined White's claimed basis for remembering the events of that particular night.

White further testified that she was able to remember the night of September 27, 2012, because she had reviewed her emails and found a Netflix receipt that confirmed she had rented the movie that she said she watched with Maddox that night. And White insisted she still had a copy of that receipt. But when Maddox

---

[2] Durham's murder took place on September 27, 2012. During further questioning, White acknowledged that her two daughters were not born until February 2013 and April 2016 respectively.

sent White a subpoena requesting a copy of the receipt, White could not provide it. (*See* Subpoena, ECF No. 24.)

### d

Given White's complete lack of credibility, there is no reasonable probability that even one juror would have struck a different balance if White had testified at trial.   Thus, Maddox cannot show prejudice from his trial counsel's failure to call White as a witness, and he is therefore not entitled to habeas relief on this component of his ineffective assistance claim.

### 4

The Court next turns to the second component of White's ineffective assistance claim, namely that his trial counsel was ineffective for failing to present a proper foundational witness to admit the victim's cell phone records and a report related to those records.[3]   White says that had that evidence been admitted, it would have shown that the victim was not at the house as described by the prosecution witnesses.

This ineffective assistance claim fails because White has failed to establish prejudice from his trial counsel's failure to secure admission of the cell phone

---

[3] As explained above, because the state trial court did not properly apply the *Strickland* standard when it reviewed this claim of ineffective assistance, the Court reviews this claim *de novo*.

records and related report.   White insists that this evidence would have been helpful to his defense, but he has not provided those records, the related report, and/or other evidence in support of this claim to the Court.   Nor has he produced any other evidence that could establish that there is a reasonable probability that those records would have caused any juror to have struck a difference balance.   Because Maddox's allegations with respect to this claim are conclusory and not supported by any evidence, they are insufficient to warrant habeas relief. *See Cross v. Stovall*, 238 F. App'x 32, 39-40 (6th Cir. 2007); *Workman v. Bell*, 178 F.3d 759, 771 (6th Cir. 1998) (holding that conclusory allegations of ineffective assistance of counsel do not justify habeas relief). *See also Washington v. Renico*, 455 F.3d 722, 733 (6th Cir. 2006) (explaining that bald assertions and conclusory allegations do not provide a basis for an evidentiary hearing on habeas review).

For all of these reasons, Maddox is not entitled to federal habeas relief on his ineffective assistance claims.

## B

Maddox next asserts that he is entitled to habeas relief because the state trial court erred when it refused to give the jury an addict-informer instruction with regard to testimony from witnesses Antwon Wakefield, Christopher Stevens, and Samantha Herd.   Maddox first raised this claim in his motion for relief from judgment that he filed in the state trial court. (*See* St. Ct. Mot., ECF No. 6-8.) That court denied relief

on the basis that the instruction was not warranted because the witnesses testified

that they were no longer addicted to drugs:

> Next, defendant claims he was denied a fair trial when the judge rejected his request for an addict-informer instruction to properly inform the jury regarding the testimony from Antwon Wakefield, Christopher Stevens, and Samantha Herd. As these witnesses all testified on the record they were no longer addicted to drugs, and defendant has not posited any proof to the contrary, this Court finds no error in the exclusion of the addict-informer jury instruction.

(St. Ct. Op. and Order, ECF No. 6-9, PageID.923.)

Maddox has not shown that the state court's denial of this claim was contrary

to, or an unreasonable application of, clearly established federal law. First, to the

extent that Maddox asserts that the trial court erred in instructing the jury under

Michigan law, the claim is not cognizable on federal habeas review. *See, e.g.,*

*Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) ("a state court's interpretation

of the propriety of a jury instruction under state law does not entitle a habeas

claimant to relief"). *See also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("it is

not the province of a federal habeas court to reexamine state-court determinations

on state-law questions").

Second, Maddox has not identified any clearly-established federal law

requiring a state court to give an addict-informer instruction. And while the

Supreme Court has held that the failure to give a jury instruction may entitle a

petitioner to relief if the failure renders the petitioner's trial fundamentally unfair, *see id.* at 72; *Cupp v. Naughten*, 414 U.S. 141, 147 (1973); *Daniels v. Lafler*, 501 F.3d 735, 741 (6th Cir. 2007), Maddox has failed to show that his trial was rendered fundamentally unfair when the trial court did not give an addict-informer instruction. Maddox is therefore not entitled to federal habeas relief on this claim.

## C

Maddox next says that he is entitled to habeas relief because the state trial court erred when joined it the murder and mutilation charges into one trial.   Maddox first raised this claim in his motion for relief from judgment filed in the state trial court (*see* St. Ct. Mot., ECF No. 6-8), and that court rejected it:

> Defendant subsequently argues the joinder of his murder case and mutilation case deprived him of a fair trial, as the alleged acts occurred on different nights in different cities. Defendant cites support for his contention that he was deprived a fair trial pursuant to *People v Daughenbaugh*, 193 Mich App 506; 484 NW2d 690 (1992). However, this case was overturned in 2012 by *People v Phillips*, 2012 WL 3319969 (2012). *Phillips* held the joinder of multiple criminal charges is allowable under Michigan law in circumstances prescribed by MCR 6.120 [....]

> Although the charges against defendant, Phillips, were not based on the same conduct or transaction. Both charges, however, stem from Phillips's conduct toward complainant, Hicks; Both offenses occurred at Hicks's apartment, and in both incidents Phillips used force. to gain access to Hicks's apartment and physically assault

her. Though the offenses occurred eight days apart, for purposes of the· court rule, the charges were related as "a series of connected acts" that constituted parts of a single plan to attack Hicks. *People v Phillips*, No. 298034, 2012 WL 3319969, (2012). Defendant Maddox's situation is even less egregious than Phillips, as Durham was killed and his dismembered body was found two days later. Moreover, defendant was found "Not Guilty" of Disinterment & Mutilation of a Durham's dead body.

(St. Ct. Op. and Order, ECF No. 6-9, PageID.923.)

Maddox has not shown that the state court's denial of this claim was contrary to, or an unreasonable application of, clearly established federal law.   First, Maddox has not identified any decision in which the Supreme Court has held that a criminal defendant has a constitutional right to a separate trial on each of the charges against him.   On the contrary, the Supreme Court has previously noted that "[i]mproper joinder does not, in itself, violate the Constitution." *United States v. Lane*, 474 U.S. 438, 446 n. 8 (1986).

Second, Maddox has failed to show that the state trial court unreasonably concluded that the consolidation of the murder and mutilation charges into one trial did not prejudice him. *See id.* (explaining that "misjoinder [constitutes] a constitutional violation only if it results in prejudice so great as to deny a defendant . . . a fair trial"); *Davis v. Coyle*, 475 F.3d 761, 777 (6th Cir. 2007) (quoting *Lane*). Moreover, any potential prejudice to Maddox was mitigated by the fact that the trial court instructed the jury to consider each of the charges separately. (*See* 8/26/14

18

Trial Tr., ECF No. 6-6, PageID.854-855.)

Under all of these circumstances, Maddox has failed to show the state trial court unreasonably rejected this claim.

## D

Next, Maddox argues that he is entitled to habeas relief because the state trial court violated his right to a public trial when it excluded certain members of the public from the courtroom during jury *voir dire*.   Maddox's trial counsel did not object to the partial closure, but Maddox says that he is still entitled to relief because the state court partially closed the courtroom without making the required findings under the Supreme Court's ruling in *Waller v. Georgia*, 467 U.S. 39, 48 (1984).[4] (*See* Pet., ECF No. 1, PageID.43-44.)

Maddox first raised this claim in his motion for relief from judgment filed in the state trial court. (*See* St. Ct. Mot., ECF No. 6-8.)   That court reviewed the claim on the merits and rejected it on the basis that it had "no merit."[5] (St. Ct. Op. and

---

[4] In *Waller*, the Supreme Court held a trial court may close a courtroom over a criminal defendant's objection only where: (1) the party seeking to close the courtroom advances an overriding interest that is likely to be prejudiced by an open courtroom; (2) the party seeking closure demonstrates that the closure is no broader than necessary to protect that interest; (3) the trial court considers reasonable alternatives to closing the proceeding; and (4) the trial court makes findings on the first three factors adequate to support the closure. *Waller*, 467 U.S. at 48.

[5] Respondent argues that when the state trial court rejected this claim, it invoked a procedural default. (*See* Answer, ECF No. 5, PageID.92-95.)   It is not obvious to the Court that the state court did so.   While the state court did refer to Michigan's

Order, ECF No. 6-9, PageID.925.)

Maddox has not shown that the state trial court's rejection of this claim was contrary to, or involved an unreasonable application of, clearly established federal law. First, as this Court explained at length in *Pouncy v. Palmer*, 2015 WL 4429547 (E.D. Mich. July 20, 2015), it is not clearly established that a state trial court must make the *Waller* findings before closing the courtroom where there is no objection to a closure of a courtroom. *See id.* at ** 7-8. Here, as noted above, Maddox's counsel did not object to the partial closure of the courtroom during *voir dire*. Thus, the partial closure of the courtroom absent *Waller* findings did not violate clearly established federal law.

Second, the Sixth Circuit in *Drummond v. Houk*, 797 F.3d 400 (6th Cir. 2015), held that it is not clearly established that a state trial court must make *Waller* findings before partially closing a courtroom. Instead, it is only clearly established that before partially closing a courtroom, a state trial court must "balance the interests

---

procedural default rule, Michigan Court Rule 6.508(D)(3)(a), it did not otherwise clearly indicate that it was invoking a procedural default. *See*, *e.g.*, *Thomas v. Burt*, 2023 WL 5447379, at ** 6-8 (6th Cir. Aug. 24, 2023) (concluding that despite state trial court's citation to Michigan Court Rule 6.508(D)(3), that court did not invoke a procedural default). But even if the state trial court did invoke a procedural default here, it clearly also addressed the merits of Maddox's public trial claim. At a minimum, the state court's conclusion that Maddox's claim had "no merit" would constitute an "alternative merits adjudication" that is subject to AEDPA deference. *See*, *e.g.*, *See Brooks v. Bagley*, 513 F.3d 618, 624-25 (6th Cir. 2008) (discussing "alternative merits ruling[s]").

favoring closure against those opposing it." *Id.* at 404.   In this case, it was not unreasonable for the state trial court to conclude (when it reviewed Maddox's public trial claim in his motion for relief from judgment), that it had conducted the required balancing during *voir dire* when it partially closed the courtroom.   Indeed, that balancing is reflected on the trial record.   Just before the trial court brought the jury panel unto the courtroom, it recognized that it would be facing "overcrowding circumstances [] in the courtroom" if it allowed all members of the public to remain in the courtroom with the jury panel. (8/19/2014 Trial Tr., ECF No. 6-3, PageID.142-143.)   The court therefore told the parties that "what [it was] going to do" was allow both the prosecution and Maddox to "designate […] three individuals" who could "remain in the courtroom during the jury selection process."[6] (*Id.*)   The court further explained that it was reserving space for three people for each side in order to comply with the "United States Supreme Court directive" that the "proceedings [be] open[] to members of the public." (*Id.*)   Under these circumstances, it was not unreasonable for the state trial court to conclude (when it ruled on Maddox's motion for relief from judgment) that when it partially closed the courtroom during *voir dire*,

---

6 In Maddox's petition, he says that the state trial court "announced that, prior to the potential, jurors entering, only two members of the public, one from each side, could remain in the courtroom during *voir dire*." (Pet., ECF No. 1, PageID.42.)   But as quoted above, at the pages of the trial transcript that Maddox relies upon, the trial court announced that *three* members from each side, not one, could remain in the courtroom during jury selection.

it had properly balanced its legitimate interest in avoiding overcrowding in the courtroom with Maddox's right to have a public trial.

Maddox further argues that the trial court's partial closure of the courtroom presents a "structural error" that requires "automatic reversal." (Pet., ECF No. 1, PageID.46.)  But, as the Court explained in *Pouncy*, Maddox's "structural-error argument is not enough to overcome the lack of a Supreme Court decision holding that a trial court must make the *Waller* [findings] absent an objection." *Pouncy*, 2015 WL 4429547, at *10.  And the fact that the closure here was only partial and was made following the required balancing of interest, *see Drummond, supra*, further undercuts Maddox's claim for automatic reversal.

Finally, Maddox argues that "there is no indication that the [state court's] closure of the courtroom was 'no broader than necessary.'" (Pet., ECF No. 1, PageID.45, quoting *Waller*, 467 U.S. at 48.)  But Maddox has not produced any evidence to undercut the state court's conclusion that the courtroom could fit only three members of the public for each side plus the jury venire.   For example, he has not submitted an affidavit or any other evidence that, contrary to the state court's explanation at the time it limited access to the courtroom, there was actually more room for additional members of the public once the jury panel was brought into the courtroom.

22

For all of these reasons, the state trial court did not unreasonably reject this claim.[7]

## E

Maddox next asserts that he is entitled to habeas relief because the prosecution wrongly withheld evidence about the credibility of the officer in charge, Sgt. Alex Vinson. (*See* Pet., ECF No. 1, PageID.47-48.)   Respondent contends that this claim is procedurally defaulted.   The Court agrees.

In this claim, Maddox argues that the prosecutor "violat[ed]" the Due Process Clause when the prosecutor "withheld evidence" related to Sgt. Vinson's credibility. (*Id.*, PageID.48.)   More specifically, Maddox says that in an unrelated case, Vinson removed an expensive watch from a murder victim and replaced it with a cheap imitation.   Vinson was later charged with tampering with evidence, and Vinson pleaded guilty to that charge. Maddox insists the prosecution knew about Vinson's misconduct prior to his (Maddox's) trial but failed to disclose it to

---

[7] In his petition, Maddox further argues that "[i]n the alternative, [his] defense counsel was ineffective for failing to object" to the partial closure of the courtroom. (Pet., ECF No. 1, PageID.42.)   But this argument fails because Maddox has not made any attempt to show how his trial counsel was constitutionally ineffective with respect to this claim.   More specifically, he has presented no argument as to how he can satisfy either of *Strickland's* requirements with respect to this claim.   Maddox's conclusory and unsupported statement that his counsel was "ineffective for failing to object" is not enough to demonstrate either that his counsel rendered a deficient performance or that that performance caused Maddox prejudice.

the defense. He says that evidence was exculpatory, that the prosecutor had a duty under *Brady v Maryland*, 373 US 83, 88 (1963), and *Giglio v United States*, 405 US 150 (1972) to turn over that evidence to the defense prior to trial, and that "[e]vidence that Sgt. Vinson violated the law could have been used to impeach his credibility, and would have been material to [Maddox's] case." (*Id.*, PageID.48-49.)

But as Respondent accurately points out (*see* Answer, ECF No. 5, PageID.95-97), Maddox never raised this claim in state court. On direct appeal, he did not raise any claim related to Vinson. And in his motion for relief from judgment in the state trial court, Maddox raised a different claim related to Vinson: that he was entitled to a new trial based on the newly-discovered evidence about Vinson's misconduct. (*See* St. Ct. Mot., ECF No. 6-8, PageID.907-908.) In that state-court motion, Maddox never argued that the prosecutor committed misconduct related to Vinson, violated Maddox's rights under the Due Process Clause, or violated either *Brady* or *Giglio* by withholding evidence related to Vinson. Because Vinson did not present his due process claim related to Vinson to the state courts, the claim is unexhausted. And Maddox cannot now exhaust the claim because he has already filed one motion for relief from judgment in the state trial court, and he has not made any effort to show he would be entitled to file a second motion raising this claim. *See* Mich. Ct. Rule 6.508(G)(1) (generally limiting a criminal defendant to a single motion collaterally attacking his conviction and sentence). This claim is

24

therefore procedurally defaulted. *See*, *e.g.*, *Dufrense v. Palmer*, 876 F.3d 248, 255 (6th Cir. 2017) (affirming conclusion of district court to deny habeas relief where petitioner's claims were "procedurally defaulted because they [were] unexhausted and no state-court remedies remain[ed]").

For all of these reasons, the Court therefore denies Maddox relief on this claim.

**F**

Next, Maddox argues that he is entitled to habeas relief because the prosecution failed to present sufficient evidence to support his convictions – specifically evidence showing that he was the perpetrator and that he acted with premeditation. Respondent contends that this claim lacks merit. The Court agrees.

**1**

Maddox raised this claim on direct review in the Michigan Court of Appeals. That court reviewed and rejected the claim as follows:

> Lastly, defendant argues that the prosecutor failed to present sufficient evidence of his identity as the perpetrator and, even if he had, there was insufficient evidence that he acted with premeditation and deliberation. We disagree. When ascertaining whether sufficient evidence was presented at trial to support a conviction, we must view the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements

25

of the crime were proven beyond a reasonable doubt. *People v. Reese,* 491 Mich. 127, 139; 815 NW2d 85 (2012). Circumstantial evidence and reasonable inferences arising from the evidence can constitute satisfactory proof of the elements of the crime. *People v. Brantley,* 296 Mich.App 546, 550; 823 NW2d 290 (2012). "[A] reviewing court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict." *People v. Nowack,* 462 Mich. 392, 400; 614 NW2d 78 (2000).

## A. IDENTITY

Identity is an essential element in a criminal prosecution, *People v. Oliphant,* 399 Mich. 472, 489; 250 NW2d 443 (1976), and the prosecution must prove the identity of the defendant as the perpetrator of a charged offense beyond a reasonable doubt. *People v. Kern,* 6 Mich.App 406, 409–410; 149 NW2d 216 (1967). Positive identification by a witness or circumstantial evidence and reasonable inferences arising from it may be sufficient to support a conviction of a crime. *People v. Davis,* 241 Mich.App 697, 700; 617 NW2d 381 (2000); *Nowack,* 462 Mich. at 400. The credibility of identification testimony is for the trier of fact to resolve and this Court will not resolve it anew. *Id.*

Two eyewitnesses, who were familiar with defendant, unequivocally identified defendant as the gunman. Wakefield testified that he and Durham were sitting on a couch, engaged in conversation, when he saw defendant shoot Durham. Stevens testified that he heard three gunshots, looked into the living room, and saw Durham lying dead on the couch, and defendant pointing a pistol toward Durham's body. These witnesses' testimony, if believed, was sufficient to establish defendant's identity as the shooter. *Davis,* 241 Mich.App at 700. Defendant's challenges to the weight and credibility of the witnesses' identification testimony were matters for the jury to decide

and do not affect the sufficiency of the evidence. *People v. Scotts,* 80 Mich.App 1, 9; 263 NW2d 272 (1977). The same challenges to the identification testimony that defendant raises on appeal were presented to the jury during trial. This Court will not interfere with the jury's role of determining issues of weight and credibility. *People v. Wolfe,* 440 Mich. 508, 514; 489 NW2d 748 (1992), amended 441 Mich. 1201 (1992). Rather, this Court is required to draw all reasonable inferences and make credibility choices in support of the jury's verdict. *Nowack,* 462 Mich. at 400. There was sufficient evidence of defendant's identity.

## B. PREMEDITATION

First-degree premeditated murder requires proof that the defendant intentionally killed the victim and that the act of killing was premeditated and deliberate. *People v. Ortiz,* 249 Mich.App 297, 301; 642 NW2d 417 (2002). Premeditation and deliberation require "sufficient time to allow the defendant to take a second look." *People v. Anderson,* 209 Mich.App 527, 537; 531 NW2d 780 (1995). The following nonexclusive list of factors may be considered to establish premeditation and deliberation: (1) the previous relationship between the decedent and the defendant, (2) the defendant's actions before the killing, (3) the circumstances surrounding the killing itself, including the weapon used and the location of the wounds inflicted, and (4) the defendant's conduct after the homicide. *People v. Unger,* 278 Mich.App 210, 229; 749 NW2d 272 (2008); *People v. Coddington,* 188 Mich.App 584, 600; 470 NW2d 478 (1991). "[M]inimal circumstantial evidence will suffice to establish the defendant's state of mind[.]" *People v. Kanaan,* 278 Mich.App 594, 622; 751 NW2d 57 (2008).

The prosecution  presented evidence that defendant and Durham discussed defendant's debt to Durham, defendant agreed to make payments, and Durham was satisfied with

the payment agreement. During their conversation, defendant was not holding a gun. Durham was not armed and had not acted aggressively toward defendant. Thereafter, as Durham and Wakefield sat on the living room couch talking, Wakefield saw defendant come from the kitchen area and shoot Durham; Durham suffered gunshot wounds in the head and chest. There was evidence that a "house gun" was kept on the kitchen counter. After shooting Durham, defendant told Wakefield, "it ain't nothing you can do for him now. He gone." Wakefield left the house, leaving defendant and Durham's body there. The next day, when Wakefield returned home, the couch, Durham's body, and the house gun were gone. Defendant informed Wakefield that Durham would never be found, explaining, "like driving down the freeway throwing pieces of puzzle out the window. Never be able to put it back together again."

This evidence, viewed in a light most favorable to the prosecution, was sufficient for a jury to find premeditation and deliberation beyond reasonable doubt. The evidence that defendant acted after the discussion about money had amicably ended, that Durham was sitting on the couch engaged in conversation with Wakefield, and that Durham had not acted aggressively toward defendant allowed the jury to find that defendant was not in imminent danger and had an opportunity to reflect on his actions before he shot Durham. The time required between defendant's conduct of obtaining a weapon and shooting Durham multiple times also afforded him sufficient time "to take a second look" at his actions. See *People v. Tilley,* 405 Mich. 38, 43–46; 273 NW2d 471 (1979), and *People v. Lewis,* 95 Mich.App 513, 515; 291 NW2d 100 (1980). Further, evidence that, after the crime, defendant attempted to dispose of the body by dismembering and scattering the parts further supports a finding of premeditation and deliberation. *People v. Plummer,* 229 Mich.App 293, 300; 581 NW2d 783 (1998). Consequently, considering the evidence of the circumstances surrounding the killing, a

28

> jury could rationally infer that defendant acted on a decided course of action rather than an unplanned impulse. The evidence was sufficient to sustain defendant's conviction of first-degree premeditated murder.

*Maddox*, 2016 WL 716294, at ** 3-5.

**2**

The clearly established federal law governing Maddox's sufficiency-of-the-evidence claim is found in the line of United States Supreme Court decisions concerning the level of proof necessary to satisfy the Due Process Clause.   In *In re Winship*, 397 U.S. 358 (1970), the Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.* at 364. And in *Jackson v. Virginia*, 443 U.S. 307 (1979), the Supreme Court determined that sufficient evidence supports a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id*. at 319 (emphasis in original).

Review of insufficiency-of-the-evidence claims under *Jackson* is especially deferential in the habeas context.   As the United States Court of Appeals for the Sixth Circuit has explained, under AEDPA,

a federal court's "review of a state-court conviction for sufficiency of the evidence is very limited." *Thomas v. Stephenson*, 898 F.3d 693, 698 (6th Cir. 2018). Sufficiency-of-the-evidence claims, in light of both *Jackson* and AEDPA, face a high bar in habeas proceedings because they are subject to two layers of deference:

> First, on direct appeal, it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury. And second, on habeas review, a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was objectively unreasonable.

*Tackett v. Trierweiler*, 956 F.3d 358, 367 (6th Cir. 2020) (quoting *Coleman v. Johnson*, 566 U.S. 650, 651 (2012)). *See also Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (explaining that when analyzing a *Jackson* claim on habeas review, a reviewing court "cannot even inquire whether *any* rational trier of fact would conclude that petitioner [ ] is guilty of the offenses with which he was charged. Instead, [the reviewing court] must determine whether the [state] Court of Appeals itself was unreasonable in *its* conclusion that a rational trier of fact could find [the petitioner] guilty beyond a reasonable doubt based upon the evidence introduced at trial") (emphasis in original) (citation omitted).

**3**

Here, given the two layers of deference the Court must apply on habeas review, the Court cannot say that the Michigan Court of Appeals unreasonably determined that a jury could have concluded that Maddox was the person who shot the victim multiple times with a firearm or that he acted with premeditation and the intent to kill.   For example, the jury could have credited Samantha Herd's testimony that Maddox, Christopher Stevens, Antwon Wakefield, and the victim were all at the house where the shooting occurred around the time of the shooting. (*See* 8/20/14 Trial Tr., ECF No. 6-4, PageID.384-385.)   It also could have credited her testimony that she left for a period of time and when she returned, Wakefield was upset, would not let her enter the house, and indicated that someone had been killed. (*See id.*, PageID.396-398.)   In addition, the jury could have believed Christopher Stevens' testimony that he heard three gunshots, went downstairs, saw Maddox standing near the victim with a gun in his hand, and that Maddox then pointed the gun at Stevens and threatened him so he would leave the house. (*See* 8/21/14 Trial Tr., ECF No. 6-5, PageID.468-471.)   Finally, the jury could have accepted Wakefield's testimony that Maddox owed the victim money, that the two men had a conversation and appeared to agree on payment, and that "the next thing [he] knew [Maddox] shot [the victim]." (*Id.*, PageID.544-547.)   Wakefield recalled hearing three shots and testified that the victim was shot in the chest area although he was unarmed and not

acting aggressively. (*See id.*)   Wakefield further testified that Maddox threatened him after the shooting, (*see id.*, PageID.548), and that Maddox told him the day after the shooting that the victim "was gone" and that "they wouldn't find him."   (*Id.*, PageID.555.)   Based on this testimony, a jury could have concluded that Maddox shot the victim multiple times at relatively close range over a monetary dispute and that Maddox had the requisite intent to support his first-degree murder, felon in possession, and felony firearm convictions.

For all of these reasons, Maddox is not entitled to relief on his insufficiency of the evidence claim.

## G

Finally, Maddox asserts that he is entitled to habeas relief because the prosecutor engaged in misconduct by (1) appealing to the jury's sense of civic duty and (2) vouching for the credibility of witness Samantha Herd.   Respondent contends that these claims are procedurally defaulted.   The Court agrees.

## 1

Maddox first raised these claims in his direct appeal of his convictions.   The Michigan Court of Appeals reviewed the claims for "plain error" because Maddox failed to object to the prosecutor's statements at trial, and it rejected the claims under that standard of review.   It further concluded that the prosecutor's statements were not improper:

32

Defendant argues that the prosecutor engaged in misconduct that denied him a fair trial when he suggested that the jury convict defendant as part of its civic duty, and vouched for the credibility of prosecution witness Herd. Again, we disagree. Because defendant did not object to the prosecutor's questions or remarks in closing argument, these claims are unpreserved. We review unpreserved claims of prosecutor misconduct for plain error affecting defendant's substantial rights. *People v. Roscoe*, 303 Mich.App 633, 648; 846 NW2d 402 (2014). This Court will not reverse if the alleged prejudicial effect of the prosecutor's conduct could have been cured by a timely instruction. *People v. Watson*, 245 Mich.App 572, 586; 629 NW2d 411 (2001).

Defendant argues that the prosecutor urged the jury to convict him to help stop the senseless violence in Wayne County by referencing crime statistics during his direct examination of a police sergeant. [....]

A prosecutor may not argue that jurors should convict a defendant as part of their civic duty. *People v. Cox,* 268 Mich.App 440, 452; 709 NW2d 152 (2005). Such an argument is improper because it appeals to the fears and prejudices of the jurors, thereby injecting issues broader than the defendant's guilt or innocence into trial. *People v. McGhee,* 268 Mich.App 600, 636; 709 NW2d 595 (2005). Viewed in context, the challenged questions were not a suggestion that the jury convict defendant on the basis of civic duty. It is apparent that the testimony was elicited to show the sergeant's investigation experience, thereby establishing a foundation for the sergeant's testimony about the limitations and difficulties of developing evidence in cases, such as this one, when a suspect is not immediately revealed. Indeed, defense counsel emphasized the lack of any physical evidence, including cell phone records, during both opening statement and closing argument, and when cross-examining the sergeant. Further, a prosecutor's good-faith effort to admit evidence

does not constitute misconduct. *People v. Dobek,* 274 Mich.App 58, 72; 732 NW2d 546 (2007). There is nothing in the record to support that the prosecutor acted in bad faith. The questions were not intended to inject issues broader than defendant's guilt or innocence, and the prosecutor was not "encouraging jurors to suspend their powers of judgment." *People v. Thomas,* 260 Mich.App 450, 453–454; 678 NW2d 631 (2004). Consequently, the prosecutor's questions did not constitute a civic duty argument, and were not plainly improper.

We also disagree with defendant's claim that the prosecutor improperly vouched for Samantha Herd's credibility during closing argument. Defendant correctly observes that a prosecutor may not vouch for the credibility of a witness by conveying that he has some special knowledge that the witness is testifying truthfully. *People v. Knapp,* 244 Mich.App 361, 382; 624 NW2d 227 (2001). However, prosecutors have great latitude when arguing at trial. *People v. Fyda,* 288 Mich.App 446, 461; 793 NW2d 712 (2010). They may argue the evidence and all reasonable inferences that arise from the evidence as they relate to their theory of the case, and they need not state their inferences in the blandest possible language. *People v. Bahoda,* 448 Mich. 261, 282; 531 NW2d 659 (1995); *Dobek,* 274 Mich.App at 66.

The prosecutor did not suggest that he had some special knowledge that Herd was credible. The prosecutor's remarks emphasizing Herd's courage in coming forward and her transparency about her lifestyle were part of a permissible argument regarding credibility that was focused on countering the defense implication that Herd was an untrustworthy drug addict and not credible. The prosecutor's remarks were made in the context of providing reasons, grounded in the evidence, why Herd should be believed. The prosecutor noted that Herd made no effort to conceal her prostitution and drug-related history. In his closing argument, the prosecutor urged the

jury to evaluate Herd's testimony and demeanor, discussed the reliability of her testimony, and argued that there were reasons from the evidence to conclude that defendant was guilty of the charged crimes. The prosecutor's argument was responsive to the evidence and the theories presented at trial and, viewed in context, was not clearly improper.

Moreover, a timely objection to the challenged remarks could have cured any perceived prejudice by obtaining an appropriate cautionary instruction. See *Watson,* 245 Mich.App at 586. And even though defendant did not object, the trial court instructed the jury that the lawyers' statements and arguments are not evidence, that the jury was to decide the case based only on the properly admitted evidence, and that the jury was to follow the court's instructions. These instructions were sufficient to dispel any possible prejudice and to protect defendant's substantial rights. *People v. Long,* 246 Mich.App 582, 588; 633 NW2d 843 (2001). It is well established that jurors are presumed to follow their instructions. *People v. Graves,* 458 Mich. 476, 486; 581 NW2d 229 (1998). The prosecutor's conduct did not deny defendant a fair trial.

*Maddox*, 2016 WL 716294, at ** 2-3.

## 2

Maddox is not entitled to habeas relief on this claim because it is procedurally defaulted. *See Hinkle*, 271 F.3d at 244.   The claim is procedurally defaulted because Maddox failed to comply with Michigan's procedural rules by objecting to the prosecutor's statements at trial, the Michigan Court of Appeals relied on that procedural rule when it held that the claims were "unpreserved" for appeal and reviewed the claims under a plain error standard of review. *Maddox*, 2016 WL

716294, at ** 2-3. That holding constituted and adequate and independent state ground. *Hinkle*, 271 F.3d at 244 (explaining that the Sixth Circuit "view[s] a state appellate court's review for plain error" – as the Michigan Court of Appeals did here – "as the enforcement of a procedural default"). Therefore, because the Michigan Court of Appeals reviewed this claim for plain error due to Maddox's failure to object at trial, Maddox cannot obtain habeas relief unless he can show cause and prejudice for failing to object at trial. *See id.* But Maddox has not even attempted to do so. Maddox has not presented any reason why the Court should excuse his procedural default. The Court will therefore deny relief on his prosecutorial misconduct claims.

## IV

Federal Rule of Appellate Procedure 22 provides that an appeal may not proceed unless a certificate of appealability is issued under 28 U.S.C. § 2253. Rule 11 of the Rules Governing Section 2254 Proceedings now requires that the Court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The substantial showing threshold is satisfied when a petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484

(2000).

The Court will **DENY** Maddox a certificate of appealability because jurists of reason could not debate the Court's conclusion that Maddox failed to demonstrate an entitlement to habeas relief.

## V

For the reasons explained above, the Court **DENIES** the petition for writ of habeas corpus (ECF No. 1) and **DENIES** Maddox a certificate of appealability.

**IT IS SO ORDERED.**

s/Matthew F. Leitman
MATTHEW F. LEITMAN
UNITED STATES DISTRICT JUDGE

Dated:   September 26, 2024

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on September 26, 2024, by electronic means and/or ordinary mail.

s/Holly A. Ryan
Case Manager
(313) 234-5126